STATE OF CONNECTICUT *v.* MARIO MARRO
(AC 21873)
(AC 21876)

STATE OF CONNECTICUT *v.* RICHARD A. ROBINSON
(AC 22251)
(AC 22252)

Lavery, C. J., and Foti and Bishop, Js.

Argued January 22—officially released April 2, 2002

*Angela R. Macchiarulo,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *David M. Kutzner* and *Richard Colangelo,* assistant state's attorneys, for the appellant (plaintiff).

*William B. Westcott,* for the appellee (Barbara Mott).

*Angela R. Macchiarulo,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *David M. Kutzner* and *Richard Colangelo,* assistant state's attorneys, for the plaintiff in error.

*Martin R. Libbin,* for the defendant in error, Richard A. Robinson.

*Opinion*

BISHOP, J. In this matter involving two consolidated writs of error and two consolidated appeals, the plaintiff state of Connecticut appeals, in AC 21873 and in AC 21876, from the judgments of the trial court granting two motions for rebate filed by the depositor of cash bail following the recapture of the fugitive defendant, Mario Marro.[1] In AC 22251 and in AC 22252, the state filed separate writs of error, challenging the propriety of the court's orders. The state claims that the court improperly determined that the depositor was entitled to a rebate on forfeited bail bonds where the principal was recaptured within one year of the date of forfeiture.

[1] In the motions for rebate and the court's written memoranda of decision dated April 9 and 23, 2001, the defendant in AC 21873 and in AC 21876 is referred to as Mario Marra. In this opinion, we refer to the defendant as Mario Marro, the name that appears on all of the other documents contained in the record.

We dismiss the writs of error and affirm the judgments of the trial court.

The record discloses the following relevant facts. The defendant was arraigned on a charge of sexual assault in the second degree in violation of General Statutes § 53a-71. The court set a cash bond in the amount of $25,000. Thereafter, Barbara Mott deposited $25,000 on behalf of the defendant to secure his release from the Bridgeport Correctional Center. In conjunction with the posting of the bond, the defendant executed an appearance bond, promising to appear in court for all scheduled hearings. Mott also executed a portion of the appearance bond that stated in part: "I, the Depositor, understand that if the above named Defendant fails to appear in accordance with the foregoing promises, I will be liable for the full amount of bond, including forfeiture of any amount deposited. I also understand that upon discharge of the bond, as specified above, the amount deposited will be returned to the above named depositor less any fee that may be required by statute."

The defendant subsequently was arrested and charged with possession of a controlled substance. Bond was set in the amount of $25,000 cash. The defendant signed a second appearance bond, and Mott deposited an additional $25,000 to secure his release from confinement. The portion of the appearance bond signed by Mott contained the same language as the first bond regarding Mott's liability for the full amount of the bond should the defendant fail to appear in court for scheduled hearings.

When the defendant failed to attend a scheduled court appearance in each of the previously mentioned cases, the court ordered the cash bonds called and forfeited, and issued a rearrest warrant. The defendant later was

apprehended in the state of Washington and returned to Connecticut, where he was arraigned.

Mott thereafter filed motions, pursuant to General Statutes § 54-65a (b)[2] and Practice Book § 38-22,[3] for partial rebate of the forfeited bonds. In her motion, Mott characterized herself as a surety and claimed to be entitled to a rebate of 38 percent of the amount forfeited. In its written memoranda of decision, the court found that 253 days had elapsed between the date of the defendant's failure to appear and his return to Connecticut, and that Mott, as a surety, was entitled to a rebate of 30 percent of the amount forfeited. Accordingly, the court ordered a rebate of $7500 on each bond.

Uncertain as to proper procedure, the state challenged the court's rulings by filing an appeal in this

[2] General Statutes § 54a-65a (b) provides: "Whenever an arrested person, whose bond has been forfeited, is returned to the jurisdiction of the court within one year of the date such bond was ordered forfeited, the surety on such bond shall be entitled to a rebate of that portion of the forfeited amount as may be fixed by the court or as may be established by a schedule adopted by rule of the judges of the court."

[3] Practice Book § 38-22 provides: "Whenever an arrested person, whose bond has been forfeited, is returned to the jurisdiction of the court within one year of the date such bond was ordered forfeited, the surety on such bond shall be entitled to a rebate in the following amount:

"(1) 46 percent of the amount of the bond ordered forfeited if the arrested person is returned to the jurisdiction of the court within 210 days of the date such bond was ordered forfeited;

"(2) 38 percent of the amount of the bond ordered forfeited if the arrested person is returned to the jurisdiction of the court within 240 days of the date such bond was ordered forfeited;

"(3) 30 percent of the amount of the bond ordered forfeited if the arrested person is returned to the jurisdiction of the court within 270 days of the date such bond was ordered forfeited;

"(4) 23 percent of the amount of the bond ordered forfeited if the arrested person is returned to the jurisdiction of the court within 300 days of the date such bond was ordered forfeited;

"(5) 15 percent of the amount of the bond ordered forfeited if the arrested person is returned to the jurisdiction of the court within 330 days of the date such bond was ordered forfeited;

"(6) 7 percent of the amount of the bond ordered forfeited if the arrested person is returned to the jurisdiction of the court within one year of the date such bond was ordered forfeited."

court and a writ of error in our Supreme Court in each of the two cases. The appeals and writs of error all raised the issue of whether the court incorrectly concluded that General Statutes § 54-65a (b) and Practice Book § 38-22, which provide for a rebate to the surety on a forfeited bail bond if the principal is returned to the jurisdiction within one year of the date of forfeiture, apply to the depositor of a cash bond as well.

Mott filed a motion to dismiss the appeals[4] on the ground that this court did not have jurisdiction because the appeals concerned the interest of a bondsperson who was not a party to the underlying action.[5] We denied the motion without prejudice and directed the parties to file supplemental briefs addressing the jurisdictional question for reconsideration by the panel hearing the merits of the appeals.

At the same time, Judge Robinson, who had granted the depositor's motions for rebate and who is the defendant in error in AC 22251 and in AC 22252, argued to the Supreme Court that a writ of error is not the proper procedural vehicle to appeal from the ruling on a motion for a bond rebate because the state is entitled to appeal directly. Thereafter, the Supreme Court, sua sponte, ordered the writs of error transferred to this court pursuant to General Statutes § 52-273[6] and Practice Book § 65-1.[7]

---

[1] Although Mott is not a party to the underlying criminal matter, she is a real party in interest, and we have granted her the right to file a brief and to argue the issue before us, thus according her, as a practical matter, party status.

[5] In support of her motion, Mott relied on *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999) (en banc), which held that because the bondsman was not a party to the underlying criminal matter, he was not entitled to appeal from the trial court's denial of its motion for rebate and release of bond pursuant to General Statutes § 52-263.

[6] General Statutes § 52-273 provides in relevant part: "No writ of error may be brought in any civil or criminal proceeding for the correction of any error which might have been reviewed by process of appeal."

[7] Practice Book § 65-1 provides that the Supreme Court may transfer a cause from itself to the appellate court.

I

We first address the jurisdictional issue. General Statutes § 52-263 sets forth the basic jurisdictional requirements for appellate review, these being that the appellant must be an aggrieved party to the underlying action and that the appeal must be taken from a final judgment.[8] In this instance, the state was a party to the underlying action, the state is aggrieved by the court's orders remitting a portion of the forfeited bonds, and the orders constitute final judgments for purposes of appeal.[9]

Contrary to Mott's claim, the holding in *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999) (en banc), is not applicable where, as in this instance, the state brings the appeal. In *Salmon*, unlike the present case, the party who brought the appeal, a bondsperson, was not a party to the underlying criminal action. Id. Because the statutory requirements are satisfied, this court has jurisdiction to hear the appeals.

Having resolved the jurisdictional question, we dismiss the writs of error as procedurally improper because appeals lie from the court's decisions to grant Mott partial rebates on the forfeited bonds. Because the right to appeal has been granted and the state has appealed, the writs of error do not lie. General Statutes § 52-273; see footnote 6.

---

[8] General Statutes § 52-263 provides in relevant part: "Upon the trial of all matters of fact in any cause of action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ."

[9] Although neither party briefed the issue of aggrievement, we conclude that in this instance, where the court ordered the cash bonds forfeited, the state's loss of a portion of the forfeited deposits constitutes its aggrievement.

## II

We now consider the merits of the appeals. The state claims that the court improperly concluded that a depositor of cash bail is entitled to a rebate following the return of the fugitive defendant to court within one year of the date of forfeiture. We do not agree.

We first set forth our standard of review. The essence of the parties' dispute involves the proper interpretation of General Statutes §§ 54-65a, 54-66 and the corresponding rules of practice. Statutory construction presents a question of law. *Trimar Equities, LLC* v. *Planning & Zoning Board*, 66 Conn. App. 631, 634, 785 A.2d 619 (2001). Our review is, therefore, plenary. Id.

General Statutes §§ 54-63c, 54-63d and 54-64a provide that an arrested person may be released from custody upon a written promise to appear or upon the execution of a bond with or without surety. Until recently, sureties and depositors of cash bail were treated differently when a bond was ordered forfeited for failure of the principal to appear in court.

General Statutes § 54-65a[10] contains provisions relating to the forfeiture of a bond executed "with surety."

---

[10] General Statutes § 54-65a provides: "(a) Whenever an arrested person is released upon the execution of a bond with surety in an amount of five hundred dollars or more and such bond is ordered forfeited because the principal failed to appear in court as conditioned in such bond, the court shall, at the time of ordering the bond forfeited: (1) Issue a rearrest warrant or a capias directing a proper officer to take the defendant into custody, (2) provide written notice to the surety on the bond that the principal has failed to appear in court as conditioned in such bond, and (3) order a stay of execution upon the forfeiture for six months. When the principal whose bond has been forfeited is returned to custody pursuant to the rearrest warrant or a capias within six months of the date such bond was ordered forfeited, the bond shall be automatically terminated and the surety released and the court shall order new conditions of release for the defendant in accordance with section 54-64a. When the principal whose bond has been forfeited returns to court voluntarily within five business days of the date such bond was ordered forfeited, the court may, in its discretion, and after finding that the defendant's failure to appear was not wilful, vacate the forfeiture order and reinstate the bond. Such stay of execution shall not

The statute specifically provides that when a bond is ordered forfeited, the court shall give to the surety written notice that the principal has failed to appear and order a six month stay of execution on the forfeiture. General Statutes § 54-65a. The bond is automatically terminated and the surety released if the principal is returned to custody within six months. General Statutes § 54-65a. If the principal is returned to custody within one year, the surety on the bond is entitled to a partial rebate on the forfeited amount. General Statutes § 54-65a.

General Statutes § 54-66 (a)[11] contains provisions relating to the forfeiture of a bond executed upon the receipt of cash bail "in lieu of a surety or sureties upon such bond." Prior to the 2001 legislative session, the statute provided that the amount received was to be paid to the payee immediately upon forfeiture, there being no provision for a written notice to the depositor, a stay of execution or a rebate. Significantly, however,

prevent the issuance of a rearrest warrant or a capias.

"(b) Whenever an arrested person, whose bond has been forfeited, is returned to the jurisdiction of the court within one year of the date such bond was ordered forfeited, the surety on such bond shall be entitled to a rebate of that portion of the forfeited amount as may be fixed by the court or as may be established by a schedule adopted by rule of the judges of the court."

[11] General Statutes § 54-66 (a) provides in relevant part: "In any criminal case in which a bond is allowable or required and the amount thereof has been determined, the accused person, or any person in his behalf, (1) may deposit, with the clerk of the court having jurisdiction of the offense with which the accused stands charged or any assistant clerk of such court who is bonded in the same manner as the clerk or any person or officer authorized to accept bail, a sum of money equal to the amount called for by such bond, or (2) may pledge real property . . . . When cash bail is offered, such bond shall be executed and the money shall be received in lieu of a surety or sureties upon such bond. Such cash bail shall be retained by the clerk of such court until a final order of the court disposing of the same is passed; provided, if such bond is forfeited, the clerk of such court shall pay the money to the payee named therein, according to the terms and conditions of the bond. . . ."

the legislature amended § 54-66[12] in 2001 for the purpose of giving depositors of cash bail the same incentives as sureties to return defendants to court.[13] Although the amendment did not provide for rebates, it did require that written notice be sent to a depositor of cash bail if the accused failed to appear. The amendment also provided for the court to order a six month stay of execution upon the forfeiture.

Practice Book §§ 38-21 and 38-22 are intended to implement the statutory scheme on forfeiture of bail. Section 38-21 provides in relevant part: "(a) If the defendant fails to appear at the time and place promised in *any bond* or written promise to appear . . . the bond may be forfeited in accordance with its terms . . . . (b) If the bond which has been forfeited was in an amount of $500 or more, the court shall order a stay of execution upon the forfeiture for six months. . . ."

[12] Public Acts 2001, No. 01-186, § 18, amended General Statutes § 54-66 by adding in relevant part the following language, which now is codified as subsection (c): "Whenever an accused person is released upon the deposit by a person on behalf of the accused person of a sum of money equal to the amount called for by such bond or upon the pledge by a person on behalf of the accused person of real property . . . and such bond is ordered forfeited because the accused person failed to appear in court as conditioned in such bond, the court shall, at the time of ordering the bond forfeited: (1) Issue a rearrest warrant or a capias directing a proper officer to take the accused person into custody, (2) provide written notice to the person who offered cash bail or pledged real property on behalf of the accused person that the accused person has failed to appear in court as conditioned in such bond, and (3) order a stay of execution upon the forfeiture for six months. When the accused person whose bond has been forfeited is returned to custody pursuant to the rearrest warrant or a capias within six months of the date such bond was ordered forfeited, the bond shall be automatically terminated and the person who offered cash bail or pledged real property on behalf of the accused person shall be released from such obligation and the court shall order new conditions of release for the accused person in accordance with section 54-64a. When the accused person whose bond has been forfeited returns to court voluntarily within five business days of the date such bond was ordered forfeited, the court may, in its discretion, and after finding that the accused person's failure to appear was not wilful, vacate the forfeiture order and reinstate the bond. Such stay of execution shall not prevent the issuance of a rearrest warrant or a capias."

[13] The legislature did not express an intent, however, to impose an *obligation* on depositors of cash bail to return defendants to court.

(Emphasis added.) Section 38-22 provides in relevant part: "Whenever an arrested person, whose bond has been forfeited, is returned to the jurisdiction of the court within one year of the date such bond was ordered forfeited, the surety on such bond shall be entitled to a rebate . . . ."

"When we engage in statutory interpretation, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 645, 708 A.2d 202 (1998). "The rules of statutory construction apply with equal force to Practice Book rules." (Internal quotation marks omitted.) *State* v. *Tinsley*, 59 Conn. App. 4, 17, 755 A.2d 368, cert. denied, 254 Conn. 938, 761 A.2d 765 (2000).

We conclude that the relevant statutes and rules of practice do not expressly provide for a rebate to a depositor of cash bail when a defendant is returned to court more than six months after the bond has been called. General Statutes § 54-65a provides for a rebate to sureties, but there is no similar provision with respect to depositors of cash bail in § 54-66. Practice Book § 38-21 contains rules regarding the forfeiture of bail that apply to "any bond," but Practice Book § 38-22, which specifically deals with rebates, states only that "the surety on such bond shall be entitled to a rebate." Neither the statutes nor the rules of practice, however, *preclude* the granting of a rebate to a depositor of cash bail when a defendant has been returned to the jurisdiction more than six months after the bond has been called.

We affirm the judgments of the trial court, but on a different basis. See *Biro* v. *Hirsch*, 62 Conn. App. 11, 16 n.7, 771 A.2d 129 (affirming proper result for different reason), cert. denied, 256 Conn. 908, 772 A.2d 601 (2001). For more than a century, Connecticut courts repeatedly have recognized that the power to admit to bail is inherent in the court so long as the defendant is in its custody. *State* v. *Vaughan*, 71 Conn. 457, 461, 42 A. 640 (1899); see also *Carino* v. *Watson*, 171 Conn. 366, 368, 370 A.2d 950 (1976). For example, our Supreme Court has stated that a court has authority "to ensure compliance with the conditions of release. While released on bail prior to trial, a defendant is still within the constructive custody of the law. *State* v. *Bates*, 140 Conn. 326, 330–31, 99 A.2d 133 (1953). The trial court retains jurisdiction over the conditions of release . . . and possesses the inherent authority to exercise powers; to implement and enforce laws; to exact [obedience . . . .] *In re Dodson*, 214 Conn. 344, 350, 572 A.2d 328, cert. denied [sub nom. *Dodson* v. *Superior Court*], 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990); see also *State* v. *Howell*, 80 Conn. 668, 671, 69 A. 1057 (1908). One court has noted that . . . a court with jurisdiction over a criminal case has the power to enforce its orders as to bail just as it has control over other orders. *Mello* v. *Superior Court*, 117 R.I. 578, 583–84, 370 A.2d 1262 (1977)." (Citations omitted; internal quotation marks omitted.) *State* v. *Ayala*, 222 Conn. 331, 347, 610 A.2d 1162 (1992).

Applying those principles here, we conclude that Connecticut courts have the power to ensure a defendant's appearance in court by granting a rebate to a depositor of cash bail on a forfeited bail bond. A court's authority to grant such a rebate is consistent not only with its recognized custodial function in matters involving bail, but also with expressed legislative policies regarding forfeiture of bail.

The underlying goal of the rebate provision in § 54-65a is to bring offenders to justice by providing an incentive to find and apprehend fugitive defendants. That goal was expressed clearly at the time the statute was enacted. Robert Kahn, a director of the Connecticut State Surety Association, an organization of bail bond agents, testified at a judiciary committee hearing on the proposed legislation that "the purpose of bail is to assure the appearance of [the] defendant in court. This bill combines two elements which will expedite the apprehension of bail jumpers by providing the bondsman with the tools and incentives to return criminal defendants who fail to appear in court. The bail and automatic rearrest warrants are the tools and *the rebate is the incentive.* . . . Passage of this bill will reduce considerably the number of defendants who flaunt the law by their failure to appear in court and who otherwise would never be brought to justice." (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1977 Sess., pp. 470–71. Senator Salvatore C. DePiano similarly explained on the floor of the Senate that the bill would "assist in perhaps apprehending people who have skipped and not appeared in court . . . ." 20 S. Proc., Pt. 8, 1977 Sess., p. 3017.

During legislative debate on the recent amendment to § 54-66, policymakers acknowledged that sureties and depositors of cash bail had been treated differently in the past. They also indicated, however, that the purpose of the amendment was to change the status quo so that depositors of cash bail would have the same opportunity as sureties to bring fugitive defendants to justice. Senator Eric D. Coleman, cochairperson of the judiciary committee, explained to his colleagues that the amendment would "permit private citizens who post bond or pledge property for a criminal defendant to have the same benefit that a professional surety would

have in the event that the defendant fails to appear in court, and that is that upon forfeiture of the bond, the forfeiture would be stayed for a period of six months to give the private citizen the opportunity to bring the defendant into court . . . . This is the same privilege or entitlement that professional bonds people have, and in some cases where parents have put their property in jeopardy and large sums of money have been put in jeopardy it was felt to be unjust in those kinds of situations, particularly when the defendant did reappear in court but there was nothing that could be done about it, even though the reappearance was within a six month period." 44 S. Proc., Pt. 10, 2001 Sess., pp. 3093–94.

Representative Michael P. Lawlor, cochairperson of the judiciary committee, spoke in a similar vein on the floor of the House. He stated that the amendment would preserve the incentive "to find the offender[s] and return them to court." 44 H.R. Proc., Pt. 20, 2001 Sess., p. 6641, remarks of Representative Lawlor. "This amendment simply says that whether it's a professionally posted bail bond or a privately posted bail bond, either way, if there's a failure to appear, there's an automatic stay for six months. If the person is returned during that period of time, the person who posted the bond can be released from it. . . . I think this would help accomplish the goal of returning people to justice after they fail to appear. And I think it's also a fairness issue." Id., pp. 6641–42.

Permitting Connecticut courts to grant rebates to depositors of cash bail is "a fairness issue" as well because a depositor of cash bail and a professional bondsperson both act to satisfy the required financial conditions for a defendant's release on bail. Although the major difference between the two is the bondsperson's *obligation* to produce the defendant in court, the

depositor and surety share a common financial interest in assuring the defendant's timely presence.

We therefore conclude that the court's rebate order, though not specifically authorized by statute, was consistent with the legislature's stated intent to treat professional bondspersons and cash depositors equally. Moreover, because the legislature has been silent on the issue of rebates to cash depositors where a defendant is returned to court subsequent to the six month automatic stay set forth in § 54-65a (a), such rebates are not in conflict with existing statutory provisions. Accordingly, the court had inherent authority under its common-law powers to grant Mott partial rebates when the defendant was returned to court within one year of the date of forfeiture.

The writs of error in AC 22251 and AC 22252 are dismissed and the judgments in AC 21873 and AC 21876 are affirmed.

In this opinion the other judges concurred.