## BOARD OF EDUCATION OF THE CITY OF NEW HAVEN ET AL. *v.* TAVARES PEDIATRIC CENTER
### (SC 17387)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued September 8, 2005—officially released January 3, 2006

*Richard J. Buturla*, for the appellants (named plaintiff et al.).

*William E. Lohnes*, for the appellee (defendant).

ZARELLA, J. The plaintiffs,[1] the board of education of the city of New Haven (board) and Area Cooperative Educational Services, appeal from the trial court's order denying their motion to quash a series of deposition subpoenas issued in connection with an administrative proceeding in Rhode Island that was initiated by the defendant, Tavares Pediatric Center, and for a protective order. On appeal, the plaintiffs claim that the trial court improperly declined to quash the subpoenas because: (1) there was no statutory authority for the issuance of the subpoenas; (2) the administrative agency requesting the subpoenas lacked authority to make such a request; (3) the trial court unduly circumscribed its own role in deciding the motion to quash; and (4) the subpoenas would compel testimony that violates the privacy rights of the student who is the subject of the administrative proceeding. The defendant claims that we lack jurisdiction to hear this appeal. We conclude that we possess jurisdiction to hear this appeal and reverse the order of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. Carlos R. is a severely disabled teenager who qualifies as a child with a disability under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (2000 & Sup. II 2002), and who is entitled under the act to a "free appropriate public education . . . ." 20 U.S.C. § 1400 (d) (1) (A) (2000). Prior to March, 2000, Carlos R. resided with his mother in New Haven and relied on the board to provide him with an appropriate educational program through

---

[1] Pat Harter, a social worker employed by Area Cooperative Educational Services, and Loretta King, the out-of-district supervisor of the New Haven public school system, also were named as plaintiffs. They have not participated, however, in this appeal. We hereinafter refer to the board of education of the city of New Haven and Area Cooperative Educational Services collectively as the plaintiffs.

Area Cooperative Educational Services. On March 16, 2000, Carlos R. was admitted to the Hospital for Special Care in New Britain. On May 3, 2000, Carlos R. was transferred to the defendant's facility in Providence, Rhode Island. At that time, the defendant began to provide Carlos R. with an appropriate educational program. Since his admission to the facility, the Rhode Island department of human services has paid the defendant for Carlos R.'s "eligible costs of care," a category that does not include education costs.[2]

On March 29, 2004, the defendant commenced a proceeding before the Rhode Island department of elementary and secondary education (Rhode Island administrative proceeding),[3] claiming that the board shared joint and several liability for the costs of Carlos R.'s education with the Rhode Island department of elementary and secondary education, the Providence department of education, and the Woonsocket education department.[4] Thereafter, Rhode Island's commissioner of elementary and secondary education designated a

---

[2] The Rhode Island department of human services appears to have done so because Carlos R.'s father was a resident of Woonsocket, Rhode Island.

[3] This proceeding was instituted pursuant to § 16-64-6 of the General Laws of Rhode Island, which empowers Rhode Island's commissioner of elementary and secondary education or his designee to resolve disputes in which "a school district or a state agency charged with educating children denies that it is responsible for educating a child on the grounds that the child is not a resident of the school district or that the child is not the educational responsibility of the state agency . . . ." The procedure established by § 16-64-6 satisfies Rhode Island's obligation under United States Department of Education regulations to maintain a procedure for "[r]esolving any complaint, including a complaint filed by an organization or individual from another State," alleging a violation of part B of the Individuals with Disabilities Education Act. 34 C.F.R. § 300.660 (a) (1) (2005); see 20 U.S.C. § 1461 et seq. (2000).

[4] The defendant previously sought similar relief with the Connecticut department of education. The Connecticut department of education concluded, however, that "[t]he [board was] not . . . responsible for providing a free and appropriate public education to [Carlos R.] during his placement at the [defendant's] facility."

hearing officer to "hold a hearing and determine the issue." R.I. Gen. Laws § 16-64-6 (2001).

On May 28, 2004, the hearing officer issued four letters rogatory,[5] each of which requested that the "appropriate judicial authority" in the state of Connecticut "assist" the Rhode Island department of elementary and secondary education in resolving the dispute over Carlos R.'s expenses by issuing a subpoena compelling the deposition of a named individual and the production of documents concerning Carlos R. The four individuals named in the letters were Carlos R.'s mother; the records custodian of the New Haven public school system; Pat Harter, a social worker employed by Area Cooperative Educational Services; and Loretta King, out-of-district supervisor employed by New Haven public schools. On June 2, 2004, the defendant's attorney, acting in his capacity as a commissioner of the Connecticut Superior Court, issued the four deposition subpoenas requested in the letters rogatory.

On June 4, 2004, the plaintiffs filed with the Superior Court in the judicial district of New Haven a motion for a protective order and to quash the three subpoenas directed to the records custodian, King and Harter.[6] On that date, the plaintiffs also filed an application for an order to show cause. The plaintiffs argued that the hearing officer lacked authority under Rhode Island law to issue the letters rogatory and, furthermore, that the deposition testimony would result in the disclosure of

---

[5] A letter rogatory is a "device by which governments and their officials may enlist the assistance of foreign courts in requiring the production of evidence." *In re International Judicial Assistance*, 936 F.2d 702, 704 (2d Cir. 1991), overruled in part on other grounds by *Intel Corp.* v. *Micro Devices, Inc.*, 542 U.S. 241, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004). Letters rogatory are used between states of the United States as well as between foreign nations. See, e.g., *Seymour* v. *Seymour*, 262 Conn. 107, 108, 809 A.2d 1114 (2002) (states); H. Smit, "Litigation Under the United States Code," 65 Colum. L. Rev. 1015, 1027 (1965) (foreign nations).

[6] Carlos R.'s mother does not challenge the subpoena directed to her.

confidential information regarding Carlos R., in violation of federal law. See 20 U.S.C. § 1232g (2000 & Sup. II 2002). The defendant contended that the hearing officer was authorized under Rhode Island law to issue the letters rogatory. The defendant also argued that our decision in *Lougee* v. *Grinnell*, 216 Conn. 483, 582 A.2d 456 (1990), restricted the trial court to the "very limited" role of "supervising [the] deposition[s] . . . ." (Internal quotation marks omitted.)

The trial court granted the application for an order to show cause and, after a hearing on the matter, denied the plaintiffs' motion to quash and for a protective order on August 27, 2004. The court determined that "[t]he proper credentials and procedure [had] been complied . . . with" and permitted the depositions to go forward.

The plaintiffs appealed to the Appellate Court from the trial court's order denying their motion. After hearing arguments, the Appellate Court ordered additional briefing on the jurisdictional issue. We thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The defendant claims that we lack jurisdiction under General Statutes § 52-263 to hear the plaintiffs' appeal because the plaintiffs were not parties to the "underlying" action, which, according to the defendant, was the Rhode Island administrative proceeding.[7] The defendant relies on *Upper Occoquan Sewage Authority* v. *Emcor Group, Inc.*, 86 Conn. App. 113, 119–20, 861 A.2d

[7] Although the board was named as a party to the Rhode Island administrative proceeding, it has denied that it is subject to the jurisdiction of the Rhode Island department of education. The defendant argues that the board, "[h]aving adamantly denied that it is a party to the proceeding in Rhode Island . . . is estopped from asserting that it is a party in the Rhode Island proceeding . . . in order to satisfy . . . [§ 52-263]." Our conclusion that the Rhode Island administrative proceeding is not the underlying action for purposes of § 52-263 renders this argument moot.

518 (2004), to support its claim that the Rhode Island administrative proceeding is the underlying action. The plaintiffs argue that the underlying action in this case is not the Rhode Island administrative proceeding but, rather, the trial court proceeding in Connecticut concerning the issuance of the subpoenas, a proceeding to which each plaintiff is a party. We agree with the plaintiffs.

"Once the question of subject matter jurisdiction has been raised, cognizance of it must be taken and the matter passed upon before [the court] can move one further step in the cause . . . ." (Internal quotation marks omitted.) *Schaghticoke Tribal Nation* v. *Harrison*, 264 Conn. 829, 839 n.6, 826 A.2d 1102 (2003). We accordingly address this issue before considering the merits. Inasmuch as our jurisdiction to hear this appeal is a question of law, our review is plenary. See, e.g., *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 750, 830 A.2d 711 (2003).

"[W]e begin with the premise that, except insofar as the constitution bestows upon this court jurisdiction to hear certain cases . . . the subject matter jurisdiction of the Appellate Court and of this court is governed by statute." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Connecticut Bar Examining Committee*, 263 Conn. 39, 45, 818 A.2d 14 (2003). In the present case, our jurisdiction to hear the appeal is governed by General Statutes § 52-263, which provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court . . . or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ." In *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999), we adopted a

"bright-line test requiring [an] appellant, in order to establish a right of appellate review pursuant to § 52-263, to establish . . . that: (1) it was a party to the underlying action; (2) it was aggrieved by the trial court decision; and (3) the appeal is from a final judgment." Id., 162–63.

We have had only one previous occasion to reflect on whether a proceeding instituted in a jurisdiction other than Connecticut properly may be considered an underlying action for purposes of § 52-263. In *Lougee* v. *Grinnell*, supra, 216 Conn. 484, the respondent, Jeannie B. Grinnell, filed an action in Texas against the American Tobacco Company (American Tobacco). Grinnell sought to depose Virginius B. Lougee, the petitioner and former chief executive officer of American Tobacco, but the Texas trial court determined that American Tobacco could not be compelled to produce a former employee such as Lougee. Id., 485. The Texas court instead commissioned a Connecticut notary to depose Lougee, and the Connecticut Superior Court authorized the issuance of a subpoena compelling Lougee's appearance. Id., 485–86. Lougee unsuccessfully moved to quash the subpoena in the Superior Court and subsequently appealed. Id., 486.

The relevant issue in *Lougee* was whether the appeal from the denial of the motion to quash was from a final judgment of the court, a prerequisite for jurisdiction under § 52-263. See id., 486–87. We observed that "the sole judicial proceeding instituted in Connecticut concerned the propriety of Grinnell's deposition subpoena, a proceeding that will not result in a later judgment from which [Lougee] can then appeal. Thus, [the] appeal falls within the first prong of the test of finality of judgment stated in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983): (1) where the order or action terminates a separate and distinct proceeding. . . . Because the separate and distinct judicial proceeding concerning

Grinnell's deposition subpoena terminated when the trial court issued the orders appealed, Lougee has appealed from a final judgment, and we will address his appeal on the merits." (Citation omitted; internal quotation marks omitted.) *Lougee* v. *Grinnell*, supra, 216 Conn. 487.

In *Lougee*, we analyzed the Superior Court's proceeding on Lougee's motion, rather than the Texas litigation, in determining whether Lougee had appealed from a final judgment. This approach is instructive. It would defy both logic and common sense for a court, when faced with a situation similar to 'that presented by *Lougee*, to analyze the Connecticut motion for compliance with the final judgment prong of § 52-263 while analyzing the out-of-state litigation for compliance with the "party to the underlying action" prong. Certainly, nothing in § 52-263 suggests that we must analyze the three prongs with reference to different underlying actions. For each appeal, there can be only one underlying action, which must be analyzed for party status, aggrievement, and finality of judgment. *Lougee* thus suggests that, in such a situation, a Connecticut court proceeding—rather than the out-of state proceeding— is the underlying action for purposes of § 52-263.

The defendant nevertheless relies on the Appellate Court's subsequent decision in *Upper Occoquan Sewage Authority* v. *Emcor Group, Inc.*, supra, 86 Conn. App. 113 (*Upper Occoquan*), a case involving facts similar to those of *Lougee*. In *Upper Occoquan*, a party to litigation pending in a Virginia trial court attempted to take the deposition of a nonparty witness in Connecticut. Id., 115. The Connecticut Superior Court authorized the issuance of a deposition subpoena and denied the witness' motion to quash. Id. On appeal, the Appellate Court concluded that the Virginia litigation was the underlying action, rather than the Superior Court's proceeding on the motion to quash, and that only parties

to the Virginia litigation could appeal from the denial of the motion to quash. See id., 117–18, 120. In reaching this conclusion, the Appellate Court stated that *State v. Salmon*, supra, 250 Conn. 155, which was decided after *Lougee*, controlled its decision. *Upper Occoquan Sewage Authority* v. *Emcor Group, Inc.*, supra, 119. We disagree with the Appellate Court's conclusion in *Upper Occoquan.*

In *Salmon*, a bail bondsman was forced to forfeit a bond after his client, a criminal defendant, failed to appear in court. *State* v. *Salmon*, supra, 250 Conn. 150. When the trial court denied the bondsman's motion for a rebate of the bond forfeiture and for a release from the bond, the bondsman appealed. Id., 151. After the Appellate Court dismissed the appeal, the bondsman appealed to this court. Id. We concluded that "the bondsman, as a nonparty to the underlying criminal action, had no right of appellate review pursuant to § 52-263." Id., 167. In reaching this conclusion, we stated that, "[t]o the extent that [*Lougee*] impl[ies] that a person or legal entity that is not a party to the underlying action constitutes a party for purposes of appellate review pursuant to § 52-263, [*Lougee* is] mistaken and [is] hereby overruled." Id., 155.

A close reading of *Salmon*, however, indicates that *Salmon* did not overrule *Lougee*. First, *Lougee* did not "imply that a person or legal entity that is not a party to the underlying action constitutes a party for purposes of appellate review pursuant to § 52-263 . . . ." Id. *Lougee* instead correctly construed the proceeding concerning the propriety of Grinnell's deposition subpoena before the Connecticut Superior Court as the underlying action and, likewise, correctly permitted a party to that proceeding to appeal from the trial court's order. See *Lougee* v. *Grinnell*, supra, 216 Conn. 487. Moreover, our discussion in *Salmon* indicates that we deemed it unnecessary to overrule *Lougee*. See *State* v. *Salmon*,

supra, 250 Conn. 161–62. In *Salmon*, we stated that the fact that *Lougee* did not "explicitly address the question of party status"; id., 162; meant that, "properly understood, [*Lougee* did] not prevent us from concluding that the term 'party' is limited to parties to the underlying action for purposes of establishing a right to [appellate] review pursuant to § 52-263, as we [did in *Salmon*]." Id. The language of *Salmon* that the defendant relies on therefore did not overrule *Lougee*.

The Appellate Court's conclusion in *Upper Occoquan* that an out-of-state action may constitute an underlying action for purposes of § 52-263 was improper because the Appellate Court misconstrued *Salmon*'s treatment of *Lougee*.[8] We instead conclude, consistent with *Lougee*, that, for purposes of determining our jurisdiction under § 52-263, the "underlying action" is the proceeding commenced in Connecticut from which the appeal is taken. The Rhode Island administrative proceeding does not satisfy this criterion.

Our conclusion that the Rhode Island administrative proceeding is not the underlying action for purposes of this appeal finds further support in our analysis of whether the term "underlying action" is limited to judicial proceedings. Well before we articulated the jurisdictional requirement of § 52-263 that an appellant be a "party to the underlying action"; id., 163; we laid the foundation for that requirement in our decision in *In re Investigation of the Grand Juror*, 188 Conn. 601, 452 A.2d 935 (1982). In that case, the trial court ordered the release of a transcript filed by a one person grand jury, but the chief of the police department of the town of Bethel, the subject of the grand jury's inquiry, objected and appealed to this court from the trial court's decision to release the transcript. Id., 602. In determin-

---

[8] We also note that "we are not bound by a decision of the Appellate Court." *State* v. *Samuels*, 273 Conn. 541, 553 n.8, 871 A.2d 1005 (2005).

ing that we lacked jurisdiction under § 52-263 to hear the appeal, we stated: " 'In a general sense, the word "action" means the lawful demand of one's right in a *court of justice*; and in this sense it may be said to include any proceeding *in such a court* for the purpose of obtaining such redress as the law provides.' *Waterbury Blank Book Mfg. Co.* v. *Hurlburt*, 73 Conn. 715, 717, 49 A. 198 (1901). It includes not only the usual civil action instituted by process but also proceedings initiated by petition . . . stipulation . . . or motion." (Citations omitted; emphasis added.) *In re Investigation of Grand Juror*, supra, 606. We stated unequivocally that "[a]ppellate relief under § 52-263 must be founded on an action *brought to the trial court*." (Emphasis added.) Id., 607.

Approximately eleven years later, in *Bergeron* v. *Mackler*, 225 Conn. 391, 391–92 n.1, 623 A.2d 489 (1993), we adopted, for purposes of § 52-263, the jurisdictional requirement that an appellant be a party to the underlying action. Since that time, neither this court nor the Appellate Court has concluded that anything other than a judicial proceeding constitutes an underlying action for purposes of § 52-263. See, e.g., *State* v. *Salmon*, supra, 250 Conn. 152–62; *In re Application for Pro Hac Vice Admission of Reich*, 83 Conn. App. 432, 436–38, 851 A.2d 308 (2004); *Leydon* v. *Greenwich*, 57 Conn. App. 727, 730–31, 750 A.2d 492 (2000); *Security Mutual Life Ins. Co. of New York* v. *Kings West Ltd. Partnership*, 56 Conn. App. 44, 46–47, 741 A.2d 329 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). By defining the term "party," as it is used in connection with § 52-263, as "[one] by or against whom a legal suit is brought . . . the party plaintiff or defendant"; *State* v. *Salmon*, supra, 154; we have reinforced the principle that an underlying action, for purposes of § 52-263, is limited to a judicial proceeding.

The principle that an underlying action may only be a judicial proceeding brought to the trial court applies

to the present case. The Rhode Island administrative proceeding is not a judicial proceeding. We accordingly conclude that the Rhode Island administrative proceeding fails to satisfy this second criterion as well.

The trial court proceeding on the plaintiffs' motion to quash and for a protective order is the underlying action from which the party plaintiffs have appealed. We consequently have jurisdiction under § 52-263 to hear the plaintiffs' appeal.

## II

Having determined that we have jurisdiction to hear this appeal, we next consider the plaintiffs' substantive claims. The plaintiffs first claim that the challenged subpoenas were not authorized by General Statutes § 52-148e. They argue that, because § 52-148e "authorizes the issuance of a subpoena for the taking of depositions to be used outside [Connecticut] in a *civil action* or *probate proceeding* only"; (emphasis in original); the defendant's attorney lacked authority to issue subpoenas compelling deposition testimony in connection with a noncivil action such as the Rhode Island administrative proceeding.[9] Rather than rebutting this argument directly, the defendant argues that *Lougee* limits the trial court to the narrow role of supervising the depositions. We agree with the plaintiffs.

As this claim involves a question of statutory interpretation, which is a question of law, our review is plenary. See, e.g., *Parrot* v. *Guardian Life Ins. Co. of America*, 273 Conn. 12, 18, 866 A.2d 1273 (2005). Section 52-148e governs the issuance of a subpoena compelling

---

[9] Our conclusion on this issue depends in part on our definition of the term "civil action" as it is used in § 52-148e. A "civil action," as that term is used in § 52-148e, however, must not be confused with an "action" as that term is used in § 52-263, a topic that we discussed at length in part I of this opinion. As we indicated in *In re Investigation of the Grand Juror*, supra, 188 Conn. 606, the term "action" is broader than the term "civil action."

a witness' appearance for the purpose of taking his deposition. General Statutes § 52-148e (a) authorizes any "Commissioner of the Superior Court, in this state, [to] issue a subpoena, upon request, for the appearance of any witness . . . to give his deposition in a civil action or probate proceeding," provided that certain conditions, not relevant to the present case, are met. General Statutes § 52-148e (f) permits the "[d]eposition of witnesses living in this state [to] be taken in like manner to be used as evidence in a civil action or probate proceeding pending in any court of . . . any other state of the United States . . . ."

Although the term "civil action" never has been defined with specific reference to § 52-148e, it has been defined in the broader, related context of title 52 of the General Statutes.[10] General Statutes § 52-91 provides in relevant part that "[t]here shall be one form of civil action. The first pleading on the part of the plaintiff shall be known as the complaint and shall contain a statement of the facts constituting the cause of action and, on a separate page of the complaint, a demand for the relief, which shall be a statement of the remedy or remedies sought. . . ."[11] Another provision of title 52 correspondingly defines a civil action, without equivocation, as "be[ing] commenced by legal process . . . ." General Statutes § 52-45a.

We correspondingly have concluded that a proceeding is not a civil action when it is "neither commenced by service of process nor controlled by rules of plead-

---

[10] When interpreting statutory language, we may seek guidance from "statutory provisions relating to the same subject matter . . . ." *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 422, 426 A.2d 1324 (1980).

[11] Nearly one century ago, we stated that the statutory predecessor of § 52-91 "very well illustrate[s]" "[t]he accepted meaning of the term 'civil action' in this State . . . ." *Slattery* v. *Woodin*, 90 Conn. 48, 50, 96 A. 178 (1915). As § 52-91 has survived substantially unchanged since our decision in *Slattery*, our description is still apt.

ing." *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 652, 363 A.2d 1085 (1975); see also *Slattery* v. *Woodin*, 90 Conn. 48, 50, 96 A. 178 (1915) (concluding that probate proceedings are not civil actions). In *Chieppo*, we determined that an appeal from a decision of the workers' compensation commissioner is not a civil action within the meaning of General Statutes (Rev. to 1972) § 52-32 based on those factors.[12] *Chieppo* v. *Robert E. McMichael, Inc.*, supra, 654. We similarly have concluded that a statutory proceeding that is not initiated by the filing of a complaint is not a "civil [action] within the meaning of title 52" of the General Statutes. *Waterbury* v. *Waterbury Police Union, Local 1237*, 176 Conn. 401, 407–408, 407 A.2d 1013 (1979). In *Waterbury Police Union, Local 1237*, we determined that a statutory proceeding to confirm, modify, or vacate an arbitration award is not a civil action on the ground that it is not initiated by the filing of a complaint. Id., 407.

The record before us demonstrates that the Rhode Island administrative proceeding is authorized by statute and was commenced not by service of process or by the filing of a complaint but, rather, by the defendant's filing of a motion. See R.I. Gen. Laws § 16-64-6 (2001). The Rhode Island administrative proceeding, therefore, is not a "civil action" as that term is used in § 52-148e.[13] Moreover, the Rhode Island administrative proceeding is not "pending . . . in court," as § 52-148e (f) requires.[14] Consequently, the defendant's attorney lacked authority under § 52-148e to issue the challenged subpoenas, and we conclude that the trial court improperly declined to grant the plaintiffs' motion to quash and for a protective order on that ground.

---

[12] General Statutes (Rev. to 1972) § 52-32 provides in relevant part: "Any *civil action* brought to the wrong court may, upon motion, be removed to a court having jurisdiction . . . ." (Emphasis added.)

[13] The Rhode Island administrative proceeding obviously is not a probate proceeding, and appellate counsel advances no such argument.

[14] See part I of this opinion.

Our conclusion that the defendant's attorney lacked authority under § 52-148e to issue the subpoenas is dispositive of this appeal. We therefore decline to reach the merits of the plaintiffs' remaining claims.

The order of the trial court is reversed and the case is remanded to that court with direction to grant the plaintiffs' motion to quash and for a protective order.

In this opinion the other justices concurred.