STATE OF CONNECTICUT *v.* ONE OR MORE
PERSONS OVER WHOM THE COURT'S
JURISDICTION HAS NOT YET
BEEN INVOKED
(AC 29117)

DiPentima, Harper and Stoughton, Js.

Argued February 6—officially released May 20, 2008

*Jon B. Chase,* the plaintiff in error.

*Richard T. Biggar*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the defendant in error.

*Opinion*

HARPER, J. The plaintiff in error, Jon B. Chase (plaintiff),[1] brings this writ of error to challenge the judgment of the trial court denying his motion for the return of property seized from him by the state police. The plaintiff claims that the court improperly denied his motion and awarded ownership of the property to another individual. We conclude that the plaintiff could have sought appellate review of the judgment by way of a direct appeal and, therefore, dismiss the writ of error as procedurally improper.

The relevant facts and procedural history are not in dispute. In June, 2005, the plaintiff purchased a pair of brass andirons at a public auction. After he took possession of the andirons, members of the state police informed him that the andirons were stolen property and requested that the plaintiff surrender them to the police.[2] In August, 2005, the plaintiff surrendered the andirons to the state police. At that time, a state police sergeant issued the plaintiff a receipt for the property and advised him of his right to regain possession of the property. The plaintiff, representing that he was the owner of the andirons, executed a written request for their immediate return.

Following unsuccessful efforts by the plaintiff to regain possession of the andirons, on January 30, 2006,

---

[1] The plaintiff, who is a member of the bar of this state, appeared pro se before the trial court and in bringing this writ of error.

[2] The plaintiff asserts that he was compelled to surrender the property under threat of arrest and that although he cooperated with the police in surrendering the property, its taking constituted a warrantless seizure.

he filed a motion[3] in the Superior Court for the judicial district of New London seeking the return of the property. He also requested that the court preclude the use of the property as evidence. The plaintiff filed the motion under the "police case" number inscribed on the receipt he received from the police when he surrendered the andirons. He represented in the motion that after speaking with one or more members of the state police, he was informed that the andirons had been given to their "true owner . . . ." Noting that there had not been any judicial determination that the andirons were, in fact, stolen property or any judicial determination as to the ownership of the andirons, the plaintiff argued that the police had violated his rights under General Statutes § 54-36a (b) (2). The plaintiff further argued that as a good faith purchaser for value, he owned the andirons and that the police acted in excess of their authority by delivering the andirons to another party, regardless of the nature of that party's claim of ownership in the property. The plaintiff requested a hearing on his motion.

The court held an initial hearing on the plaintiff's motion on April 4, 2006, but continued the matter until June 8, 2006. Prior to the June hearing, Ann Brown filed a written request with the court for permission to be heard. In an attached notarized affidavit, Brown averred that the andirons were stolen from her home in North Stonington on or before May 27, 2005, and that the andirons belonged to her. The plaintiff objected to Brown's request, and the court overruled that objection. Also prior to the June hearing, the state filed a written objection to the plaintiff's motion on the ground that "rightful title to the property sought to be returned has yet to be determined" and that "return of the property would be premature in that it is potential evidence in

---

[3] In support of his right to file the motion, the plaintiff cited General Statutes § 54-33f and Practice Book §§ 41-13 and 41-15.

a prospective criminal case." The state represented that the andirons were stolen from Brown's home and that "[t]he state has no particular interest as to who the court determines is the rightful owner of the andirons as between [the plaintiff] and Brown." The state denied that the police acted in violation of § 54-36a (b) (2), as there existed "a genuine dispute as to who is the rightful owner of the property." The state also represented that there had yet to be any criminal prosecution related to the theft of the property, that the property was "evidence" and that "[a] premature return of the property could jeopardize the criminal prosecution." The state requested that the court determine ownership of the andirons and that "the property be retained as evidence until such time as a determination is made in the underlying criminal matter that it is no longer necessary to retain said property."

At the June, 2006 hearing, the plaintiff; Brown; Herb Soler, a resident state trooper; and an assistant attorney general representing the state addressed the court with regard to the plaintiff's motion. Earlier, the plaintiff had filed an offer of proof in support of his motion, but the court did not receive testimony or other evidence at the June hearing. At the conclusion of the hearing, the court denied the plaintiff's motion. The court found "by a preponderance of the evidence" that Brown was the "rightful owner" of the andirons and ordered the state police to return them to her.

Thereafter, the plaintiff filed the writ of error presently before us.[4] Prior to the time of argument, this court sua sponte ordered that the parties "be prepared to address at the hearing on the merits, whether the denial of a request for return of seized property made pursuant to General Statutes § 54-36a and [General Statutes] § 54-33f is properly reviewed by writ of error."

---

[4] The plaintiff filed the writ of error in our Supreme Court, which transferred the writ to this court pursuant to Practice Book § 65-1.

The parties addressed this issue during oral argument before this court.

The interpretation of our rules of practice presents a question of law over which this court's review is plenary. See, e.g., *Wells Fargo Bank of Minnesota, N.A.* v. *Morgan*, 98 Conn. App. 72, 78, 909 A.2d 526 (2006); *Banks Building Co., LLC* v. *Malanga Family Real Estate Holding, LLC*, 92 Conn. App. 394, 397, 885 A.2d 204 (2005); *Murphy* v. *Zoning Board of Appeals*, 86 Conn. App. 147, 151, 860 A.2d 764 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1080 (2005).

The writ of error is the traditional method of obtaining review by our Supreme Court under the common law. Since the passage of legislation conferring the right to appeal, the writ of error is utilized properly in the relatively few sets of circumstances in which an appeal does not lie. Practice Book § 72-1 (b) provides in relevant part: "No writ of error may be brought in any civil or criminal proceeding for the correction of any error where . . . the error might have been reviewed by process of appeal . . . ." "A writ of error is a separate and distinct review procedure, not to be confused with a statutory appeal. . . . If there is a right to appeal, a writ of error should not be brought . . . ." (Citations omitted.) *Vasquez* v. *Superior Court*, 102 Conn. App. 394, 404–405, 925 A.2d 1112, cert. denied, 284 Conn. 915, 931 A.2d 935 (2007); see also *State* v. *Caplan*, 85 Conn. 618, 622–24, 84 A. 280 (1912); *Cary* v. *Phoenix Ins. Co.*, 83 Conn. 690, 696–97, 78 A. 426 (1910); *New York, N.H. & H.R. Co.* v. *Hungerford*, 75 Conn. 76, 83, 52 A. 487 (1902) (noting "settled policy of court and legislature to discourage and limit the use of the writ of error as a process for invoking the jurisdiction of this court in cases where the more adequate and equitable process of appeal can be used"); *State* v. *Marro*, 68 Conn. App. 849, 854, 795 A.2d 555 (2002).

General Statutes § 52-263, which affords a statutory right of appeal, provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9." Our Supreme Court has adopted "a bright-line test requiring [an] appellant, in order to establish a right of appellate review pursuant to § 52-263, to establish in the following sequence that: (1) it was a party to the underlying action; (2) it was aggrieved by the trial court decision; and (3) the appeal is from a final judgment." *State* v. *Salmon*, 250 Conn. 147, 162–63, 735 A.2d 333 (1999). The court explained: "A bright-line test will aid litigants, who wish to challenge trial court orders through the appellate process, to determine the proper procedural method for such a challenge—an appeal, or a writ of error. The clarity yielded by a bright-line test, moreover, is helpful because the procedural decision ordinarily must be made in a very short time period." Id., 164.

To determine whether the plaintiff had a right to bring an appeal, we first address whether he was a party to the underlying action. Our Supreme Court unambiguously has defined what constitutes "an underlying action" for purposes of § 52-263: "In a general sense, the word *action* means the lawful demand of one's right in a *court of justice*; and in this sense it may be said to include any proceeding *in such a court* for

the purpose of obtaining such redress as the law provides. . . . It includes not only the usual civil action instituted by process but also proceedings initiated by petition . . . stipulation . . . or motion. . . . [A]ppellate relief under § 52-263 must be founded on an action *brought to the trial court*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Board of Education* v. *Tavares Pediatric Center*, 276 Conn. 544, 555, 888 A.2d 65 (2006). The court emphasized that "an underlying action may only be a judicial proceeding brought to the trial court . . . ." Id., 555–56.

In *State* v. *Salmon*, supra, 250 Conn. 162, our Supreme Court concluded that "the term 'party' is limited to parties to the underlying action for purposes of establishing a right to review pursuant to § 52-263 . . . ." The court explained: "Ordinarily, the word party has a technical legal meaning, referring to those by or against whom a legal suit is brought . . . the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons. . . . This definition of party, which we also have labeled party status in court . . . includes only those who are parties to the underlying action." (Citations omitted; internal quotation marks omitted.) Id., 154.

The record reflects that at the time the plaintiff filed the motion for the return of the andirons, there merely was a criminal investigation into the theft of the andirons. No judicial proceeding, of civil, criminal or any nature, was underway related to the andirons. By filing the motion, the plaintiff initiated a judicial proceeding in the Superior Court in which he asserted his claim for redress for the alleged seizure and wrongful retention of the andirons by the police.[5] The judicial proceeding that

---

[5] During argument before this court, the plaintiff asserted that he was not a party to the underlying proceeding because he was not a party to any *criminal* proceeding related to the andirons, nor had he initiated any proceeding. We disagree that the plaintiff did not initiate a judicial proceeding, and, although it is accurate that he was not a party to any criminal proceed-

ensued culminated in the court's rendering of judgment adverse to the plaintiff. The plaintiff initiated the underlying proceeding, actively participated in the proceeding and his rights were the subject of the proceeding. The legal interest that the plaintiff sought to vindicate and on which the court rendered judgment was central, not ancillary, to the proceeding. Under these circumstances, we conclude that the plaintiff was a party to the underlying action at issue in this writ of error.

Second, we must determine whether the plaintiff was aggrieved by the trial court's decision. "It is settled law that the right to appeal is purely statutory and is allowed only if the conditions fixed by statute are met. . . . In all civil actions a requisite element of appealability is that the party claiming error be aggrieved by the decision of the trial court. . . . The test for determining aggrievement encompasses a well settled twofold determination: first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *In re Allison G.*, 276 Conn. 146, 156–57, 883 A.2d 1226 (2005). Here, it hardly can be disputed that the plaintiff asserted that he had a personal and legal interest in the subject matter of the decision, that he owned and had the right to possess the andirons that he purchased at auction, and that the court's decision specially and injuriously affected this interest.

Third, we must address whether the decision at issue is a final judgment. We reiterate that although there was a criminal investigation underway related to the

ing, such fact is of no consequence to our analysis when, as here, there was no criminal proceeding related to the subject of this litigation.

theft of the andirons at the time of the underlying proceeding, the plaintiff's motion initiated the only judicial proceeding related to the andirons or the plaintiff's interest therein. The court's decision unambiguously resolved the plaintiff's motion adversely to him, and there were no further proceedings related to that decision. On this record, it appears that there was no other judicial proceeding that would have resulted in a later judgment from which the plaintiff properly could appeal the decision at issue. In determining whether certain interlocutory orders or rulings of the trial court are final judgments for purposes of appeal, our appellate courts apply the *Curcio* test: "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). "[A]ppellate jurisdiction is limited to final judgments. . . . That restriction on our appellate jurisdiction involves a policy to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." (Citations omitted; internal quotation marks omitted.) *Harvey* v. *Wilcox*, 67 Conn. App. 1, 5, 786 A.2d 533 (2001). Here, we conclude that the decision at issue terminated a separate and distinct proceeding, in accordance with *Curcio*'s first prong, and, thus, constituted a final judgment for purposes of appeal.

On the basis of the foregoing analysis, we conclude that the plaintiff had a statutory right to appeal from the court's decision and, thus, improperly brought a writ of error. Accordingly, we dismiss the writ of error as procedurally improper and do not reach the plaintiff's substantive challenges to the court's decision.

The writ of error is dismissed.

In this opinion the other judges concurred.