39 A.3d 1105 (2012)
304 Conn. 330
STATE of Connecticut
v.
Adam GAULT.
No. 18112.
Supreme Court of Connecticut.
Argued December 1, 2011.
Decided April 10, 2012.
*1106 Proloy K. Das, Hartford, for the appellant (victim).
Timothy J. Sugrue, assistant state's attorney, with whom, on the brief, were Gail P. Hardy, state's attorney, and David L. Zagaja, senior assistant state's attorney, for the appellee (state).
*1107 William S. Fish, Jr., with whom, on the brief, were Timothy P. Jensen, Hartford, and Christopher L. Ayers, for the appellee (intervenor The Hartford Courant Company).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, EVELEIGH, HARPER and VERTEFEUILLE, Js.
ROGERS, C.J.
This appeal presents the question of whether the rights afforded to crime victims under the state constitution; see Conn. Const., amend. XXIX (victim's rights amendment);[1] are enforceable by way of an appeal filed by a victim from an order issued in a criminal case. The victim in this criminal matter appeals[2] from the trial court's denial of her motion to extend indefinitely the sealing of an affidavit submitted by a police officer in support of the warrant authorizing the arrest of the defendant, Adam Gault. That sealed affidavit, which has been redacted to eliminate names and other personal information that might identify the victim, recounts statements of the victim and other individuals in regard to the defendant's kidnapping and alleged sexual assault of the victim.[3] The victim claims that the *1108 court improperly denied her motion to extend the sealing of the affidavit and, further, that she has standing to appeal from the trial court's order. The state argues in response that the victim lacks standing to pursue an appeal and, therefore, this court is without subject matter jurisdiction to decide it. The Hartford Courant Company, which was permitted to intervene in the case during the pendency of the appeal, takes no position as to the victim's standing but contests her claims regarding the propriety of the trial court's order. Because we conclude that the victim lacks standing to pursue this appeal, we dismiss the appeal without reaching its merits.
The following procedural history is relevant. On October 3, 2007, the state filed an application for an arrest warrant for the defendant, alleging a charge of kidnapping in the first degree for the purpose of committing a sexual assault in violation of General Statutes § 53a-92 (a)(2)(A). At that time, pursuant to the state's request, the trial court ordered that the affidavit supporting the arrest warrant be sealed for fourteen days pursuant to Practice Book § 36-2.[4] On October 17, 2007, the victim filed a motion requesting an extension of the sealing order. The victim requested that the affidavit remain sealed "indefinitely," citing, inter alia, her state constitutional right to be treated with fairness and respect throughout the criminal justice process; see Conn. Const., amend. XXIX (b)(1); and General Statutes § 54-86e, which requires that information from which the identity of a sexual assault victim may be ascertained be held confidential.[5] *1109 She claimed further that, pursuant to the balancing test contemplated by Practice Book § 42-49A,[6] her right to protect her identity overrode the right of the public to inspect the arrest warrant affidavit.
Thereafter, a hearing was held over several days on the victim's motion, which various representatives of the press opposed.[7] On November 16, 2007, at the conclusion of the hearing, the trial court ordered that the redacted version of the affidavit be unsealed. According to the court, the redaction removed any information that reasonably could be used to identify or locate the victim or to subject her to any further investigation by the public. The victim's appeal followed.[8] In a subsequent articulation, the trial court explained that in reaching its decision to release a redacted version of the affidavit, it had relied, "in the first instance ... upon the presumption of full public access to all court filings. Practice Book § 42-49A (a). The court also determined, however, that pursuant to § 42-49A (c) there existed a competing interestthat is, a sexual assault victim's right to be treated with fairness and respect; see Conn. Const., amend. XXIX [b][1]; and to maintain the confidentiality of his or her identifying information; see General Statutes § 54-86ewhich ... overrode the public's right to view the affidavit in its entirety. In an effort to balance these competing interests, the court redacted those portions of the affidavit which identified the victim, or which could be used to determine her identity. The court did not redact any other information from the affidavit, thereby ensuring, as directed by § 42-49A (c), that the order restricting public access to the affidavit would be no broader than *1110 necessary. In choosing to redact portions of the affidavit, the court concluded that there existed no reasonable alternative to redaction which would have adequately protected the privacy of the victim and yet still preserved, to the extent possible, the public's right of access."
The victim claims that the trial court improperly ordered that a redacted version of the affidavit be released and that, pursuant to the provision of the victim's rights amendment requiring that she be treated with fairness and respect, she was entitled to have the entire affidavit remain sealed indefinitely.[9] She contends further that she is entitled to challenge the trial court's order on appeal because the victim's rights amendment "makes [her] a party to the criminal action for purposes of enforcing her rights under the amendment." According to the victim, the constitutional grant of substantive rights to victims necessarily requires a remedy for claimed violations of those rights and, therefore, "crime victims must have standing within the criminal justice process" to vindicate those rights.[10] The state *1111 claims, to the contrary, that the victim's rights amendment does not provide victims with party status.[11] It argues that the amendment, by its terms, delegates the authority for its enforcement to the General Assembly, and that body has not passed legislation providing for party status for crime victims or otherwise conveying a right to appeal. We agree with the state.
The question of the victim's standing to appeal implicates this court's subject matter jurisdiction. See Eder Bros., Inc. v. Wine Merchants of Connecticut, Inc., 275 Conn. 363, 368, 880 A.2d 138 (2005). It presents, therefore, a threshold issue for us to resolve before we may entertain the victim's substantive claims. Board of Education v. Tavares Pediatric Center, 276 Conn. 544, 550, 888 A.2d 65 (2006). "[I]f for any reason the appellant lacks standing to appeal, there is no justiciable issue before us." In re Investigation of the Grand Juror into the Bethel Police Dept., 188 Conn. 601, 603, 452 A.2d 935 (1982). Because "our jurisdiction to hear this appeal is a question of law, our review is plenary." Board of Education v. Tavares Pediatric Center, supra, at 550, 888 A.2d 65.
"[W]e begin with the premise that, except insofar as the constitution bestows upon this court jurisdiction to hear certain cases ... the subject matter jurisdiction of the Appellate Court and of this court is governed by statute." (Citation omitted; internal quotation marks omitted.) Id. If not constitutionally provided for, the right of appeal "is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeals are met." (Internal quotation marks omitted.) State v. McCahill, 261 Conn. 492, 499, 811 A.2d 667 (2002). Typically, "[t]he ability to bring an appeal, in the civil or criminal context, depends upon the legislative authorization as contained in the General Statutes." Id.
Turning first to the constitution, a review of the language of the victim's rights amendment discloses that the amendment, while establishing many substantive rights for crime victims, does not include a right to appeal. Compare, e.g., Cal. Const., art. I, § 28(c)(1) (2011 Sup.) ("[a] victim, the retained attorney of a victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim, may enforce the rights enumerated in subdivision [b] in any trial *1112 or appellate court with jurisdiction over the case as a matter of right").[12] Furthermore, the victim's rights amendment does not speak to the question of a victim's party status or standing. Compare, e.g., Tex. Const., art. I, § 30(e) ("[a] victim or guardian or legal representative of a victim has standing to enforce the rights enumerated in this section but does not have standing to participate as a party in a criminal proceeding or to contest the disposition of any charge").
By its explicit terms, the victim's rights amendment contemplates additional implementing legislation to give effect to its provisions. As this court has explained: "Constitutional provisions are not necessarily self-executing. In so far as they either expressly or by necessary implication require legislative action to implement them, they are not effective until that legislative action is had." State ex rel. Cotter v. Leipner, 138 Conn. 153, 158, 83 A.2d 169 (1951). "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right[s] given may be enjoyed and protected, or the dut[ies] imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." (Internal quotation marks omitted.) State v. Sanabria, 192 Conn. 671, 688, 474 A.2d 760 (1984); see, e.g., id., at 689-90, 474 A.2d 760 (when constitutional amendment stated that right to probable cause hearing was to be provided "`in accordance with procedures prescribed by law,'" implementing statute was required to effectuate right). The victim's rights amendment provides certain rights, but does not detail procedures by which a victim may seek vindication of those rights in the event they are denied. After enumerating ten substantive rights, the victim's rights amendment provides that "[t]he [G]eneral [A]ssembly shall provide by law for the enforcement of this subsection." Conn. Const., amend. XXIX (b); see footnote 1 of this opinion. Accordingly, if there exists a right to appeal to enforce those rights, it is to be found in the General Statutes. We turn, therefore, to the *1113 General Statutes, to determine whether the legislature has provided victims with party status or, otherwise, a right to appeal from trial court orders.[13]
Appeals to this court, and the Appellate Court, generally are authorized by General Statutes § 52-263. That statute provides in relevant part that following proceedings in the trial court, "if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial ... he may appeal to the court having jurisdiction from the final judgment of the court or of such judge...." (Emphasis added.) General Statutes § 52-263. In view of the plain language of the statute, this court previously has held that "review by way of appeal pursuant to § 52-263 is available only to parties to an underlying action." (Emphasis added.) State v. Salmon, 250 Conn. 147, 152, 735 A.2d 333 (1999). The court explained that, "[o]rdinarily, the word party has a technical legal meaning, referring to those by or against whom a legal suit is brought ... the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons." (Emphasis added; internal quotation marks omitted.) Id., at 154, 735 A.2d 333. The court rejected the notion that "party," as used in § 52-263, was intended to apply more broadly, for example, to "[a] person concerned or having or taking part in any affair, matter, transaction, or proceeding...." (Internal quotation marks omitted.) Id., at 157-58, 735 A.2d 333.[14]
It is a "basic tenet of the criminal justice system that prosecutions are undertaken and punishments are sought by the state on behalf of the citizens of the state, and not on behalf of particular victims or complaining witnesses." State v. Barnett, 980 S.W.2d 297, 308 (Mo.1998), cert. denied, 525 U.S. 1161, 119 S.Ct. 1074, 143 L.Ed.2d 77 (1999). "A criminal prosecution is a public matter and not a contest between the defendant and his victims, or their relatives." (Internal quotation marks omitted.) Id. It is axiomatic, therefore, *1114 that "[t]he parties to a criminal action are the [state], in whose sovereign name it is prosecuted, and the person accused"; Dix v. Superior Court, 53 Cal.3d 442, 451, 807 P.2d 1063, 279 Cal.Rptr. 834 (1991); and not the crime victim(s). State v. Harrison, 24 P.3d 936, 945 (Utah 2001).
Section 52-263 limits the right of appeal to a "party," and, in the context of a criminal proceeding, victims do not fit within the plain meaning of that term. Since the passage of the victim's rights amendment in 1996, the legislature has not amended § 52-263 to include victims among those entitled to appeal, nor has it passed a new statute extending appellate rights to victims or conferring party status on them. Additionally, we have examined the extensive victims' rights legislation enacted subsequent to the amendment, and we conclude that the act creating the office of victim advocate; see Public Acts 1998, No. 98-231 (P.A. 98-231); and the legislative history leading to that act's passage reveal clearly the legislature's intent that victims' participation in criminal proceedings be limited in scope and not equivalent to that of a party with a right to appeal.
In 1998, responding to concerns of victim advocacy groups that passage of the victim's rights amendment had yet to result in the anticipated improved treatment of crime victims, the legislature created the office of victim advocate, which is charged, generally, with acting on behalf of victims and otherwise ensuring that their rights are respected. The newly formed office was tasked with a number of initiatives in that regard. See P.A. 98-231, § 2. In relevant part, the office of victim advocate was empowered to "[f]ile a limited special appearance in any court proceeding for the purpose of advocating for a victim" the rights secured by subdivisions (4), (5), (7), (8), (9) and (10) of the victim's rights amendment. (Emphasis added.) P.A. 98-231, § 2(5); see also footnote 1 of this opinion. Subsequently, in 2001, that charge was expanded to include advocacy "for any right guaranteed to a crime victim by the [c]onstitution of the state or any right provided to a crime victim by any provision of the general statutes...." Public Acts 2001, No. 01-211, § 12(5).[15]
The term "special appearance" is not defined in the chapter of the General Statutes pertaining to the victim advocate, nor does the term appear elsewhere in the statutes. The qualifier "limited" suggests something less than the usual court appearance. Because the precise meaning of "limited special appearance" is unclear, we consult the legislative history underlying P.A. 98-231.
As originally written, the bill that ultimately became P.A. 98-231 gave much broader powers to the victim advocate in regard to pursuing victims' rights in court and other legal proceedings. Specifically, the victim advocate was empowered to "[r]epresent any victim or appear, intervene or bring an action on behalf of any victim ... before any court, agency, board or commission to ensure the legal, civil and special rights of victims...." Substitute Senate Bill No. 449, 1998 Sess. Prior to its passage, however, the bill was amended to respond to concerns raised by the office of the chief state's attorney that the proposed legislation would result in unacceptable delays in criminal court proceedings and, consequently, potential violations of defendants' speedy trial rights and increased costs of litigation for the state. In his submitted remarks, then Chief State's Attorney *1115 John M. Bailey explained that, pursuant to the legislation as initially drafted, "[i]f, at any point, a victim or his counsel believes his interests are not being served in a criminal case, this bill would permit them to file and argue motions, oppose motions filed by the state or defense and even argue to the jury. It may also permit victims to file appeals and argue before the Connecticut Supreme Court." (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1998 Sess., p. 1268. Bailey likened the potential appeals by victims to the reviews of court closure orders that certain nonparties may pursue under the authority of General Statutes § 51-164x,[16] and he warned of the much larger number of victims that might seek such appeals were they authorized.[17] Id., at p. 1269.
Bailey "agree[d] that the constitutional amendment protecting victims' rights [was] an important landmark in the criminal justice landscape ... [and that] [i]t must be acknowledged and implemented with all deliberate speed...." Id., at p. 1270. Bailey urged, however, that the legislature act "consistent[ly] with the rights of criminal defendants and the equally important interests of the state in investigating and prosecuting crime." Id. At committee hearings on the bill, Kevin Kane and Frank Maco, then the state's attorneys from New London and Litchfield, respectively, also expressed concern about the delay that extensive victim participation in criminal proceedings might engender, as well as the potential interference with the prosecutorial function. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1998 Sess., pp. 927-28.
The legislation thereafter was amended to its present, more limited form in response to the foregoing concerns. In offering the applicable amendment to the Senate, Senator Donald E. Williams explained: "[T]his [a]mendment clarifies that while the [o]ffice of the [v]ictim [a]dvocate can appear on behalf of a victim to ensure the constitutional rights that I enumerated previously, the [o]ffice of the [v]ictim [a]dvocate may not intervene directly into a criminal case and file any substantive motions or take any substantive action *1116 that would in any way influence the outcome of that criminal case..... We wouldn't want to inadvertently be creating additional grounds for appeal in cases, or in any way upsetting the due process in our court system for criminal defendants." (Emphasis added.) 41 S. Proc., Pt. 8, 1998 Sess., pp. 2587-88. Similarly, Representative Michael P. Lawlor, when summarizing the amendment for members of the House of Representatives, explained that "it limits the type of representation which the crime victim advocate can participate in." 41 H.R. Proc., Pt. 16, 1998 Sess., p. 5415. Specifically, "the type of participation that the crime victim [advocate] might undertake... would be in the nature of a limited special appearance rather than as a full party in a case." (Emphasis added.) Id., at pp. 5417-18, remarks of Representative Lawlor. According to Representative Lawlor, the change represented "an additional, appropriate limitation on the jurisdiction of the crime victim advocate...." Id., at p. 5418.
Although the foregoing legislative history related to the creation of the office of the victim advocate, and the victim in the present case has appeared through privately retained counsel, we see no reason why the legislature would afford greater participatory rights to victims having their own attorneys than it would to those represented by the victim advocate, because the same concernsdelay, possible impingement on defendants' constitutional rights, increased costs to the state and interference with the prosecutorial functionstill would be implicated. To reiterate, nothing in the victim's rights amendment itself or in subsequently enacted legislation explicitly makes victims parties to criminal prosecutions or otherwise affords them rights to appeal. Moreover, we conclude that this legislative history, which led to passage of an act authorizing only a "limited special appearance" for crime victims' legal representatives, conclusively demonstrates that, although the legislature intended to create an avenue through which victims could appear in court proceedings and articulate their positions in regard to matters relating to their rights, it did not intend that victims were to have full party status or the right to bring an appeal. Accordingly, we conclude that the victim lacks standing to prosecute this appeal, and that this court lacks subject matter jurisdiction to hear it.
The victim has requested that, if we conclude that we lack jurisdiction over her appeal, we instead treat it as a public interest appeal pursuant to General Statutes § 52-265a.[18] Such requests normally *1117 are directed only to the Chief Justice of this court. General Statutes § 52-265a (b), (c) and (d). In any event, although the jurisdictional prerequisite of a final judgment may be excused for appeals otherwise meeting the requirements of § 52-265a, it nonetheless remains that the statutory authorization to bring such appeals is extended only to "any party to an action...." General Statutes § 52-265a (a). Because, as we have explained, the victim was not a party to the criminal proceedings in the trial court, she also is precluded from pursuing a § 52-265a appeal.
The appeal is dismissed.
In this opinion the other justices concurred.
NOTES
[1] Article first, § 8, of the constitution of Connecticut, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "(b) In all criminal prosecutions, a victim, as the general assembly may define by law, shall have the following rights: (1) The right to be treated with fairness and respect throughout the criminal justice process; (2) the right to timely disposition of the case following arrest of the accused, provided no right of the accused is abridged; (3) the right to be reasonably protected from the accused throughout the criminal justice process; (4) the right to notification of court proceedings; (5) the right to attend the trial and all other court proceedings the accused has the right to attend, unless such person is to testify and the court determines that such person's testimony would be materially affected if such person hears other testimony; (6) the right to communicate with the prosecution; (7) the right to object to or support any plea agreement entered into by the accused and the prosecution and to make a statement to the court prior to the acceptance by the court of the plea of guilty or nolo contendere by the accused; (8) the right to make a statement to the court at sentencing; (9) the right to restitution which shall be enforceable in the same manner as any other cause of action or as otherwise provided by law; and (10) the right to information about the arrest, conviction, sentence, imprisonment and release of the accused. The general assembly shall provide by law for the enforcement of this subsection. Nothing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case." The foregoing provision commonly is referred to as the victim's rights amendment. State v. McCahill, 261 Conn. 492, 496, 811 A.2d 667 (2002).
[2] The victim appealed from the trial court's order to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199(c) and Practice Book § 65-1. Prior to the case being transferred, the Appellate Court, sua sponte, ordered the parties to appear and give reasons why the victim's appeal "should not be dismissed for lack of subject matter jurisdiction because the ... victim is not a party to the underlying criminal action and [therefore] has no right to appeal pursuant to General Statutes § 52-263." Following the parties' appearance, the Appellate Court ordered supplemental briefing on the questions of whether the victim, pursuant to the victim's rights amendment, was a party entitled to appeal and whether the trial court's order constituted an appealable final judgment. In their briefs to this court, the parties have addressed the jurisdictional issues raised by the Appellate Court in addition to the substantive claims raised by the victim. Because the standing issue is dispositive, we do not reach the question of whether there is a final judgment or the victim's substantive claims.
[3] Although the victim alleged that the defendant had both kidnapped and sexually assaulted her, he was charged only with kidnapping in the first degree for the purpose of committing a sexual assault. See General Statutes § 53a-92 (a)(2)(A). He was not charged with sexual assault because, by the time the victim came forward with her accusations, the statute of limitations for that crime had expired. On March 5, 2008, subsequent to the filing of this appeal, the defendant pleaded guilty to the kidnapping charge. Throughout the trial court proceedings, the defendant took no position on the rulings that are at issue in the present appeal, and he has not participated in the appeal.
[4] Practice Book § 36-2 provides: "(a) All affidavits submitted to the judicial authority in support of the application for an arrest warrant and from which a determination of probable cause for the issuance of an arrest warrant has been made shall be filed with the clerk of the court together with the return of the arrest warrant pursuant to Section 44-11 and thereafter remain a part of the court file.

"(b) At the time the arrest warrant is issued, upon written request of the prosecuting authority and for good cause shown, the judicial authority may order that the supporting affidavits be sealed from public inspection or that disclosure be limited under such terms and conditions as it finds reasonable, subject to the further order of any judicial authority thereafter having jurisdiction of the matter. No such order shall limit their disclosure to the attorney for the accused, but the judicial authority may place reasonable restrictions on the attorney's further disclosure of the contents of the affidavits.
"(c) Any order sealing such affidavits from public inspection or limiting their disclosure shall be for a specific period of time, not to exceed two weeks from the date of arrest, and within that time period the prosecuting authority may by written motion seek an extension of the period. The original order of the court sealing the affidavit or limiting its disclosure shall remain in effect until the court issues an order on the motion. The motion to extend the period and the court's order thereon shall be made in accordance with the provisions of Section 42-49A. Affidavits which are the subject of such an order shall remain in the custody of the clerk's office but shall be kept in a secure location apart from the remainder of the court file as long as the order is in effect.
"(d) Unless the judicial authority issuing an arrest warrant has, upon written request of the prosecuting authority, entered an order limiting disclosure of the supporting affidavits, all affidavits filed pursuant to this section shall be open to public inspection and copying and the clerk shall provide copies to any person upon receipt of any applicable fee."
[5] The state also filed a motion to extend the sealing of the arrest warrant affidavit, but only on the basis of § 54-86e. On appeal, the state has confined its arguments to the question of the victim's standing.
[6] Practice Book § 42-49A provides in relevant part: "(a) Except as otherwise provided by law, there shall be a presumption that documents filed with the court shall be available to the public.

"(b) Except as provided in this section and except as otherwise provided by law, including Sections 36-2, 40-29 and 40-40 through 40-43 and General Statutes § 54-33c, the judicial authority shall not order that any files, affidavits, documents, or other materials on file with the court or filed in connection with a court proceeding be sealed or their disclosure limited.
"(c) Upon written motion of the prosecuting authority or of the defendant, or upon its own motion, the judicial authority may order that files, affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding be sealed or their disclosure limited only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest. An agreement of the parties to seal or limit the disclosure of documents on file with the court or filed in connection with a court proceeding shall not constitute a sufficient basis for the issuance of such an order.
"(d) In connection with any order issued pursuant to subsection (c) of this section, the judicial authority shall articulate the overriding interest being protected and shall specify its findings underlying such order and the duration of such order...."
[7] During the proceedings in the trial court, the members of the press did not move formally to intervene, but the trial court permitted them to be heard on the motions to seal.
[8] Subsequent to the November 16, 2007 hearing, the trial court ordered that, unless an appeal was filed by November 27, 2007, the redacted version of the arrest warrant affidavit would be unsealed on that date. The victim filed her appeal on November 26, 2007. Accordingly, the affidavit remains sealed pending the outcome of this appeal.
[9] Although she did not do so at the trial level, in this court the victim also claims support for her position in jurisprudence recognizing a federal constitutional right to privacy, and she further requests that this court exercise its supervisory powers to order that the affidavit remain sealed. In general, even though the affidavit has been redacted, the victim's position is that the entire document should remain sealed because third parties may use non-identifying information contained in the affidavit to investigate and attempt to ascertain her identity, and the cited constitutional provisions give her the right to be free from what she terms "unwarranted public intrusion."
[10] The victim claims additionally that she is a party who may appeal because she "initiated" an "action" by filing a motion to seal the arrest affidavit, and it is that action that underlies this appeal. According to the victim, an action is "any judicial proceeding which seeks the redress of the law," and in some cases may be initiated by a motion. Regardless of the merits of those assertions, the victim's argument is contrary to the record. Clearly, the victim did not commence a separate proceeding by filing her motion to seal, but, rather, she filed that motion in the context of a preexisting criminal prosecution. Her attorney filed an appearance in the criminal case, her motion bears the docket number of that case, and the motion was argued before and decided by the judge assigned to the criminal matter with the participation of the state and the presence of the defendant. In this regard, the cases cited by the victim are readily distinguishable. See Abreu v. Leone, 291 Conn. 332, 348-49, 968 A.2d 385 (2009) (allowing intervening plaintiff department of children and families to appeal ruling in action plaintiff foster father commenced by filing in Superior Court motions for protective order and to quash subpoena issued in connection with separate proceedings pending before state claims commissioner); Board of Education v. Tavares Pediatric Center, 276 Conn. 544, 556, 888 A.2d 65 (2006) (allowing plaintiffs to appeal ruling in action they commenced by filing in Superior Court motions for protective order and to quash subpoena issued in connection with Rhode Island administrative proceeding); Lougee v. Grinnell, 216 Conn. 483, 487-90, 582 A.2d 456 (1990) (allowing petitioner to appeal ruling in action he commenced by filing in Superior Court motion to quash subpoena issued in connection with Texas action), overruled in part by State v. Salmon, 250 Conn. 147, 154-55, 735 A.2d 333 (1999); Waterbury Blank-Book Mfg. Co. v. Hurlburt, 73 Conn. 715, 717-18, 49 A. 198 (1901) (arbitration proceeding initiated pursuant to District Court rule was "`action'" from which dissatisfied party could appeal to Superior Court); see also In re Investigation of the Grand Juror into the Bethel Police Dept., 188 Conn. 601, 606-607, 452 A.2d 935 (1982) (dismissing appeal taken from judge's order releasing grand jury report; appellant had not initiated action to suppress report via filing of petition and, "[e]ven had [he] made a proper objection [in the grand jury proceedings], an objection to the trial court's decision is not the legal equivalent of an action").

The victim also contends that this court should treat the trial court's allowance of her motion to seal as the granting of a motion to intervene. We disagree. The victim did not request intervention either as a matter of right or permissively, and accordingly, the trial court did not make findings or determinations as to the multifactor tests that govern each form of intervention. See Kerrigan v. Commissioner of Public Health, 279 Conn. 447, 456-57, 461, 904 A.2d 137 (2006). We cannot presume on a silent record that the court conducted this analysis, and we decline to undertake on appeal an inquiry entrusted, in the first instance, to a trial court. Moreover, the victim cited no authority in support of this argument until filing her reply brief, and that authority merely responds to the general proposition, asserted by the state, that third party intervention is not permissible in a criminal case.
[11] We do not construe the state's arguments, as does the victim, as also challenging the propriety of the victim's limited participation in the proceedings before the trial court. Rather, we construe the state's arguments as contesting the victim's characterization of her participation, namely, that her filing of a motion in the criminal prosecution and arguing in support of it rendered her a "party" who had initiated an independent "action." As we will explain hereinafter, there is statutory authorization for a victim advocate to file a limited special appearance for the purpose of advocating for a victim's rights. The victim's participation in the proceedings in the trial court, which consisted solely of her motion to seal the affidavit that identified her and oral argument related to the motion, was consistent with that statutory authorization.
[12] The victim's rights amendment also does not provide expressly that appeals by victims are disallowed. Compare, e.g., La. Const., art. I, § 25 ("[n]othing in this [s]ection shall... confer upon any person the right to appeal or seek supervisory review of any judicial decision made in a criminal proceeding" [emphasis added]); Ohio Const., art. I, § 10a ("[t]his section does not confer upon any person a right to appeal or modify any decision in a criminal proceeding" [emphasis added]); Va. Const., art. I, § 8-A (same). The victim's rights amendment does provide that "[n]othing in [the amendment] or in any law enacted pursuant to [it] shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case." Conn. Const., amend. XXIX (b). Unlike the cited provisions from our sister states' constitutions, it is unclear from the quoted text of our state constitution whether the prohibition of appeals is intended to apply to victims or only to criminal defendants. See People v. Richardson, 196 Ill.2d 225, 230-31, 256 Ill. Dec. 267, 751 N.E.2d 1104 (2001) (holding identically worded provision in Illinois constitution to bar defendant's appeal based on purported violation of victim's rights, because legislature's intent was that Illinois' victim's bill of rights be used as "`shield'" to protect victims and not as "`sword'" to be wielded by criminal defendants), superseded by statute on other grounds, State v. Hestand, 362 Ill.App.3d 272, 280, 297 Ill.Dec. 831, 838 N.E.2d 318 (2005). We have examined the legislative history of our victim's rights amendment and, although it is not illuminating on whether subsection (b) applies to bar appeals by victims, the legislators indicated at several junctures during debate on the bill that the amendment was modeled, in part, on the Illinois victim's bill of rights. See 39 H.R. Proc., Pt. 9, 1996 Sess., pp. 2822, 2825, 2851. Accordingly, it is not clear that the victim's rights amendment applies to bar the victim's present appeal.
[13] Because the victim's rights amendment specifically directs the General Assembly to provide for its enforcement and further, as discussed herein, victims are not parties to a criminal prosecution, we must reject the claim, suggested by the victim, that a right to appeal is implicit in the amendment. Even were that not the case, courts in our sister states have declined to construe constitutional provisions affording participatory rights to victims as granting rights any broader than those that are explicitly stated. See, e.g., Gansz v. People, 888 P.2d 256, 257, 258-59 (Colo. 1995) (victim's constitutional right to be "heard when relevant ... and present at all critical stages of the criminal justice process" did not confer legal standing on victim to appeal order dismissing criminal charges); Hall v. State, 579 So.2d 329, 331 (Fla.App.) (victim's constitutional right "to be heard at all crucial stages of criminal proceedings" did not "permit victims or their families to actively participate in the conduct of the trial by sitting at counsel table or being introduced to the jury"), review denied, 587 So.2d 1329 (Fla.1991); Reed v. Becka, 333 S.C. 676, 683, 511 S.E.2d 396 (App.1999) (victim's constitutional rights to be notified of proceedings, to be heard and to consult with prosecutor did not give victim right to veto proposed plea agreement).
[14] Thus, this court concluded in State v. Salmon, supra, 250 Conn. at 162, 735 A.2d 333, that a bail bondsman could not appeal from a trial court's order to forfeit bond because he was not a party to the criminal proceedings. See also In re Application for Pro Hac Vice Admission of Reich, 83 Conn. App. 432, 436, 851 A.2d 308 (2004) (governor's chief of staff could not challenge on appeal order granting out-of-state attorney pro hac vice status, as he was not party to proceedings on that matter); Leydon v. Greenwich, 57 Conn.App. 727, 730-31, 750 A.2d 492 (2000) (attorney not representing any party to case could not appeal from sanctions imposed on him by trial court for his filing of amicus brief without permission of court).
[15] Public Act 98-231, § 2, and Public Act 01-211, § 12, are codified at General Statutes § 46a-13c (5).
[16] General Statutes § 51-164x provides in relevant part: "(a) Any person affected by a court order which prohibits any person from attending any session of court, except any session of court conducted pursuant to section 46b-11, 46b-49, 46b-122 or 54-76h or any other provision of the general statutes under which the court is authorized to close proceedings, whether at a pretrial or trial stage, shall have the right to the review of such order by the filing of a petition for review with the Appellate Court within seventy-two hours from the issuance of such court order....

"(c) Any person affected by a court order that seals or limits the disclosure of any files, affidavits, documents or other material on file with the court or filed in connection with a court proceeding, except (1) any order issued pursuant to section 46b-11 or 54-33c or any other provision of the general statutes under which the court is authorized to seal or limit the disclosure of files, affidavits, documents or materials, whether at a pretrial or trial stage, and (2) any order issued pursuant to a court rule that seals or limits the disclosure of any affidavit in support of an arrest warrant, shall have the right to the review of such order by the filing of a petition for review with the Appellate Court within seventy-two hours from the issuance of such court order...."
[17] According to Bailey, the number of criminal cases typically disposed of annually in Connecticut exceeded 150,000, and more than 350,000 if motor vehicle cases were included. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1998 Sess., p. 1269. Bailey opined that, "[e]ven if only half of these cases results in intervention by a victim, the effect on our already overburdened criminal justice system will be devastating." Id.
[18] General Statutes § 52-265a provides: "(a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The Chief Justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.
"(c) Upon certification by the Chief Justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the Chief Justice, who shall thereupon call a special session of the Supreme Court for the purpose of an immediate hearing upon the appeal.
"(d) The Chief Justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."