******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JUSTIN SKIPWITH
(AC 37501)

Gruendel, Alvord and Mullins, Js.

*Argued April 6—officially released September 1, 2015*

(Appeal from Superior Court, judicial district of Waterbury, Cremins, J. [trial]; Fasano, J. [judgment; motion to vacate sentence, petition for writ of error coram nobis].)

*Jeffrey D. Brownstein*, for the plaintiff in error (Tabatha Cornell).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Jason Germain*, senior assistant state's attorney, for the defendant in error (state).

*Opinion*

ALVORD, J. The plaintiff in error, Tabatha Cornell, brings this writ of error from the judgment of the trial court dismissing her nonparty motion to vacate the sentence of the defendant, Justin Skipwith, and her petition for a writ of error coram nobis. In her writ, she claims that the trial court erred in dismissing (1) her motion to vacate the defendant's sentence because her constitutional rights pursuant to article first, § 8 (b), of the Connecticut constitution were violated, and (2) her petition for a writ of error coram nobis because she "is an aggrieved nonparty who has no other adequate remedy provided by law." We consider these claims together. We dismiss the writ of error.

The following facts are relevant to the plaintiff in error's writ of error. On May 5, 2012, Brianna Washington, the daughter of the plaintiff in error, was killed when a vehicle driven by the defendant struck her. Prior to striking Washington with the vehicle he was driving, the defendant had been stabbed multiple times. On April 2, 2013, the defendant pleaded nolo contendere to the charges of manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b (a) and operation of a motor vehicle while under the influence of liquor in violation of General Statutes § 14-227a (a) (2). The defendant was sentenced to a term of imprisonment of ten years, execution suspended after two years, with three years probation.

Prior to the defendant's plea, the plaintiff in error had obtained counsel, Jeffrey D. Brownstein. Brownstein sent a fax dated October 23, 2012, to Assistant State's Attorney Donald Therkildsen, advising Therkildsen that he wanted to be contacted prior to any offer and disposition in the matter, and notifying Therkildsen of his opposition to an *Alford*[1] or nolo contendere plea. The victim advocate made several telephone calls to Brownstein. During one of those calls, she informed him that they had received his letter, and offered to set up a meeting between the state's attorney and Brownstein and his client. The meeting never occurred because Brownstein was unavailable.

On February 24, 2013, Brownstein was notified that jury selection for the defendant's trial would begin on March 4, 2013. On that date, the plaintiff in error's son and a family friend went to court and met with the successor assistant state's attorney, who subsequently had been assigned to the case, and the victim advocate. Brownstein was not thereafter contacted until April 2, 2013, at which time he was notified that the defendant had entered into a plea bargain, the terms of which involved the defendant pleading nolo contendere in exchange for the previously mentioned sentence.

The plaintiff in error thereafter filed a motion to vacate the defendant's sentence and a petition for a

writ of error coram nobis. In her motion and petition, the plaintiff in error claimed that "[n]either the victim nor the undersigned attorney were aware of the time/date for sentencing and neither the undersigned attorney nor the victim were contacted with any information concerning the proposed plea disposition," which failures constituted violations of article first, § 8, of the constitution of Connecticut, as amended by articles seventeen and twenty-nine of the amendments.[2] On May 6, 2013, the court held a hearing, during which Brownstein argued both the motion and petition. The court also gave Washington's family members the opportunity to speak, and the plaintiff in error and a family friend did so. The court then rendered its decision, in which it concluded that it lacked jurisdiction to vacate the defendant's sentence, as his sentence was not illegal, and that the ancient common-law remedy of the writ of error coram nobis was not available to the plaintiff in error because "this is a situation whereas clearly covered by a statute, [General Statutes § 54-223], and certainly the ancient common law writ of coram nobis would not trump the statute in place."[3] Accordingly, the court dismissed both the motion and petition. This writ of error followed.[4]

We begin with a review of the constitutional, statutory, and case law surrounding the victim's rights amendment. The amendment sets forth ten substantive rights that a victim shall have in a criminal prosecution. With regard to enforcement, the amendment states that "[t]he general assembly shall provide by law for the enforcement of this subsection . . . ." Conn. Const., amend. XXIX (b). Accordingly, our Supreme Court has explained that "by its explicit terms, the victim's rights amendment contemplates additional implementing legislation to give effect to its provisions." *State* v. *Gault*, 304 Conn. 330, 340, 39 A.3d 1105 (2012). "In so far as [constitutional provisions] either expressly or by necessary implication require legislative action to implement them, they are not effective until that legislative action is had." (Internal quotation marks omitted.) Id. Thus, the amendment is not self-executing, as it requires legislative action to implement it. Id. In order to determine whether the plaintiff in error in the present case has the right to seek to have the defendant's sentence vacated, we must look to the General Statutes to determine whether the legislature has provided such a remedy.[5]

There is no provision in our General Statutes that expressly authorizes a victim to pursue the remedy sought by the plaintiff in error in the present case. In fact, a review of our statutes reveals that the specific remedy sought by the plaintiff in error is statutorily prohibited. The victim's rights amendment itself states that "[n]othing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appel-

late relief in any criminal case." Conn. Const., amend. XXIX (b). Moreover, our legislature had previously enacted § 54-223, providing that the "[f]ailure to afford the victim of a crime any of the rights provided pursuant to any provision of the general statutes shall not constitute grounds for vacating an otherwise lawful conviction or voiding an otherwise lawful sentence or parole determination."[6]

The plaintiff in error argues that she seeks to vacate only the defendant's sentence, not his conviction. To that end, she distinguishes the language contained in the statute from that contained in the subsequently enacted constitutional provision and contends that she "did not rely on any statutory grounds but instead relied on [the victim's rights amendment], which, unlike [§] 54-223, explicitly omits any mention that the failure to afford victims rights shall not be a basis for the voiding of an otherwise lawful sentence . . . rather it only speaks of such violations not being a basis for vacating a conviction or a basis for appellate relief." (Citation omitted; emphasis omitted.) In other words, she argues that because the constitutional provision does not expressly state that violation of a victim's rights shall not constitute grounds for vacating an otherwise lawful sentence, the statutory provision prohibiting such action was meant to bar only *the defendant* from seeking to have his own sentence vacated on the basis of a violation of the victim's rights.[7] As previously discussed, because the victim's rights amendment is not self-executing, the plaintiff in error would still have to identify enabling legislation in order to prevail on her claim. For this, we look to the authority cited by the plaintiff in error.

The plaintiff in error argues that the court improperly dismissed her motion to vacate the defendant's sentence.[8] The court dismissed her motion on the ground that it lacked jurisdiction because the sentence was not illegal. In her appellate brief, the plaintiff in error contends that "the defendant's disposition and or sentence was imposed in an illegal manner because it was done in such a way that blatantly violated the victim's constitutional right . . . ." Quoting *State* v. *Lawrence*, 281 Conn. 147, 159, 913 A.2d 428 (2007), the defendant in error, the state, argues that "[b]ecause the plaintiff in error's claim 'falls outside that set of narrow circumstances in which the court retains jurisdiction over a defendant once that defendant has been transferred into the custody of the commissioner of correction to begin serving his sentence, the court lacks jurisdiction to consider the claim pursuant to a motion to correct an illegal sentence under § 43-22.' " We agree with the defendant in error.

"A motion to correct an illegal sentence under Practice Book § 43-22 constitutes a narrow exception to the general rule that, once a defendant's sentence has

begun, the authority of the sentencing court to modify that sentence terminates." *State* v. *Casiano*, 282 Conn. 614, 624, 922 A.2d 1065 (2007). Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." "Connecticut has recognized two types of circumstances in which the court has jurisdiction to review a claimed illegal sentence. The first of those is when the sentence itself is illegal, namely, when the sentence either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . The other circumstance in which a claimed illegal sentence may be reviewed is that in which the sentence is within relevant statutory limits, but was imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ."[9] (Internal quotation marks omitted.) *State* v. *Fairchild*, 155 Conn. App. 196, 204, 108 A.3d 1162, cert. denied, 316 Conn. 902, 111 A.3d 470 (2015). "This latter category reflects the fundamental proposition that [t]he *defendant* has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." (Emphasis added; internal quotation marks omitted.) *State* v. *Parker*, 295 Conn. 825, 839, 992 A.2d 1103 (2010).

The plaintiff in error provides no case law addressing a victim's motion to vacate a defendant's sentence on the basis of a violation of the victim's constitutional rights under the victim's rights amendment. More specifically, she provides no authority supporting the proposition that a defendant's sentence is " 'imposed in an illegal manner' "; id.; when the sentencing proceeding was conducted in violation of the *victim's* constitutional right to be present. Accordingly, in the absence of legislation providing victims with the authority to seek to have the defendant's sentence vacated, and with the express prohibition of such a remedy contained in § 54-223, we conclude that the court properly dismissed the plaintiff in error's motion to vacate the defendant's sentence.

The plaintiff in error also argues that the court erred in dismissing her petition for a writ of error coram nobis,[10] arguing that such procedure is "not foreclosed because she has no adequate remedy available to her." The plaintiff in error does not provide any precedent, and we are aware of none, for the use of the writ of error coram nobis under the present circumstances, in which a nonparty seeks to vacate the conviction of the

defendant. Moreover, the remedy she seeks by way of the writ is prohibited by § 54-223, as previously discussed. Accordingly, we conclude that the court properly dismissed the petition for a writ of error coram nobis.

The court properly dismissed the plaintiff in error's motion to vacate the defendant's sentence and the plaintiff in error's petition for a writ of error coram nobis.

The writ of error is dismissed.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] Article first, § 8 (b), of the constitution of Connecticut provides in relevant part: "b. In all criminal prosecutions, a victim, as the general assembly may define by law, shall have the following rights: (1) The right to be treated with fairness and respect throughout the criminal justice process; (2) the right to timely disposition of the case following arrest of the accused, provided no right of the accused is abridged; (3) the right to be reasonably protected from the accused throughout the criminal justice process; (4) the right to notification of court proceedings; (5) the right to attend the trial and all other court proceedings the accused has the right to attend, unless such person is to testify and the court determines that such person's testimony would be materially affected if such person hears other testimony; (6) the right to communicate with the prosecution; (7) the right to object to or support any plea agreement entered into by the accused and the prosecution and to make a statement to the court prior to the acceptance by the court of the plea of guilty or nolo contendere by the accused; (8) the right to make a statement to the court at sentencing; (9) the right to restitution which shall be enforceable in the same manner as any other cause of action or as otherwise provided by law; and (10) the right to information about the arrest, conviction, sentence, imprisonment and release of the accused. The general assembly shall provide by law for the enforcement of this subsection. Nothing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case."

We refer to the foregoing provision as the victim's rights amendment throughout this opinion.

[3] The court additionally concluded, and the defendant in error argues, that if the relief sought by the plaintiff in error were to be afforded, the defendant's right against double jeopardy would be implicated. Our resolution of the plaintiff in error's claims does not require us to address this argument.

[4] The plaintiff in error filed a writ of error in our Supreme Court, which transferred it to this court pursuant to Practice Book § 65-1. The plaintiff in error named the state's attorney for the judicial district of Waterbury as the defendant in error.

[5] The plaintiff in error additionally places reliance on article first, § 10, of the constitution of Connecticut, which provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." "Article first, § 10, has been viewed as a limitation upon the legislature's ability to abolish common law and statutory rights that existed in 1818, when article first, § 10, was adopted, and which were incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury . . . . Therefore, where a right existed at common law or by statute in 1818 and became incorporated into the Connecticut constitution by the adoption of article first, § 10, the legislature may restrict or abolish such incorporated right only where it provides a reasonable alternative to the enforcement of such right." (Internal quotation marks omitted.) *Cefaratti* v. *Aranow*, 154 Conn. App. 1, 25, 105 A.3d 265 (2014), cert. granted on other grounds, 315 Conn. 919, 107 A.3d 960 (2015). The plaintiff in error provides limited analysis, and, as the defendant in error points out, she makes no claim that the rights she attempts to assert were in existence prior to 1818. Accordingly, her claim fails.

[6] We note that our victim's rights amendment and related statutory provisions differ from the federal Crime Victims' Rights Act (act), codified at 18

U.S.C. § 3771, which sets forth eight substantive rights and also provides a procedural mechanism for the enforcement of such rights. Under the act, "[a] victim may make a motion to re-open a plea or sentence only if—(A) the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied; (B) the victim petitions the court of appeals for a writ of mandamus within 14 days; and (C) in the case of a plea, the accused has not pled to the highest offense charged." 18 U.S.C. § 3771 (d) (5); see also Fed. R. Crim. P. 60. Accordingly, the disparity between the state and federal provisions thus renders the plaintiff in error's reliance on the federal provision and case law interpreting that provision misplaced.

Similarly, the plaintiff in error's reliance on one Oregon Supreme Court case is also misplaced. The plaintiff in error cites *State* v. *Barrett*, 350 Or. 390, 407, 255 P.3d 472 (2011), in which the Oregon Supreme Court concluded that a victim, whose state constitutional right to advance notice of the defendant's plea and sentencing hearing had been violated, was entitled to have the defendant resentenced. Significantly, the Oregon constitution, in addition to authorizing the legislature to enact laws to provide for the enforcement of the enumerated rights, specifically states that "[e]very victim . . . shall have remedy by due course of law for violation of a right established in this section." (Internal quotation marks omitted) Id., 400. The Oregon constitution limited the remedies available to victims to exclude the invalidation of a conviction. Id., 400 n.6. Additionally, the Oregon legislature enacted statutes establishing "procedures by which victims may seek to have violations of their constitutional rights vindicated." Id., 394. Because the Oregon constitution expressly provides that victims are entitled to a remedy, and the Oregon statutes establish procedures for enforcement, the Oregon Supreme Court's decision in *Barrett* is distinguishable.

[7] In support of this argument, the plaintiff in error cites a footnote in *State* v. *Gault*, supra, 304 Conn. 340 n.12, in which our Supreme Court, after considering the text of the victim's rights amendment, its legislative history, and sister state provisions, stated that "it is unclear from the quoted text of our state constitution whether the prohibition of appeals is intended to apply to victims or only to criminal defendants." After concluding that it was unclear whether the amendment *barred* the victim's appeal, the court next examined our statutes to determine whether implementing legislation had been passed granting the victim the right to appeal. Id., 340–41. Finding no legislative authorization, the court in *Gault* ultimately dismissed the appeal, concluding that the victim, as a nonparty to the criminal proceeding, lacked standing to appeal and that the court lacked jurisdiction to hear the appeal. Id., 347.

The plaintiff in error in the present case did not file a direct appeal as the plaintiff did in *Gault*, but rather filed a writ of error, which she contends is permissible pursuant to Practice Book § 72-1. That provision states in relevant part: "(a) Writs of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court in the following cases: (1) a decision binding on an aggrieved nonparty . . . ." Practice Book § 72-1 (a). The plaintiff in error argues that "[t]he legislature could have foreclosed not only the seeking of appellate relief but also of a writ of error for a violation of a victim's rights. It can only be presumed that it was not by accident but by intentional design that they did not." Our Supreme Court in *State* v. *McCahill*, 261 Conn. 492, 499, 811 A.2d 667 (2002), declined to "resolve whether the victim's rights amendment affords either the victim or the victim advocate the right to bring a writ of error for a purported violation of a right contained in the amendment" because "a resolution of that question [was] not necessary to the ultimate issue . . . ." Likewise, our resolution of the plaintiff in error's claim does not require that we address that question.

[8] The plaintiff in error also contends that this court has the "inherent authority to create a state constitutional remedy . . . ." In support of this argument, she first provides an analogy to the exclusionary rule under our fourth amendment jurisprudence as an "example of a prophylactic rule formulated by the judiciary in order to protect a constitutional right." She also cites *Binette* v. *Sabo*, 244 Conn. 23, 47, 710 A.2d 688 (1998), in which our Supreme Court recognized a private cause of action for money damages under article first, §§ 7 and 9, of the constitution of Connecticut. The defendant in error counters both of these arguments on the ground that the victim's rights amendment is distinct, in that it specifically contemplates legislative action. The defendant in error contends that "[i]t would be inap-

propriate for this court to step in where the constitution dictates the legislature must act and, in fact, has acted, prohibiting the remedy she seeks." We agree with the defendant in error. Accordingly, this argument is unavailing.

[9] We note that the list of enumerated circumstances is not exhaustive. See *State* v. *Parker*, 295 Conn. 825, 840, 992 A.2d 1103 (2010).

[10] "A writ of error coram nobis is an ancient common-law remedy which authorized the trial judge, within three years, to vacate the judgment of the same court if the party aggrieved by the judgment could present facts, not appearing in the record, which, if true, would show that such judgment was void or voidable. . . . The facts must be unknown at the time of the trial without fault of the party seeking relief. . . . A writ of error coram nobis lies only in the unusual situation [in which] no adequate remedy is provided by law." (Citations omitted; internal quotation marks omitted.) *State* v. *Das*, 291 Conn. 356, 370–71, 968 A.2d 367 (2009).

---